IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SCOTT WYNN, an individual,

      Plaintiff,

      v.

TOM VILSACK, in his official capacity as
U.S. Secretary of Agriculture; ZACH
DUCHENEAUX, in his official capacity as
Administrator, Farm Service Agency,

      Defendants.

Civil Action
No. 3:21-cv-514

# COMPLAINT
### *Challenge to Constitutionality of Section 1005 of*
### *American Rescue Plan Act of 2021*
### *Injunctive and Declaratory Relief Requested*

## INTRODUCTION

1. The Constitution's promise of equal justice under the law is that the government will treat people as individuals, not simply as members of their racial group. "In the eyes of government, we are just one race here. It is American," *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 239 (1995) (Scalia, J., concurring), and all Americans are entitled to equal treatment regardless of color. Plaintiff Scott Wynn brings this lawsuit to challenge a law

that distributes benefits and burdens on the basis of race in violation of the Fifth Amendment to the Constitution.

2. The American Rescue Plan Act of 2021, which allows the federal government to distribute 1.9 trillion dollars in federal funds, was signed into law on March 11, 2021. Section 1005 of the Act directs the United States Secretary of Agriculture to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021."

3. Under Section 1005, social disadvantage does not turn on the individual characteristics of any farmer or rancher. Section 1005 assumes farmers and ranchers are socially disadvantaged for no other reason than their membership in a racial group. By contrast, Section 1005 categorically excludes other farmers and ranchers from loan assistance because they do not belong in a "socially disadvantaged racial group." Farmers and ranchers who are Black, American Indian/Alaska Native, Hispanic, Asian, and Hawaiian/Pacific Islander are eligible for loan assistance, regardless of whether they have suffered any racial discrimination in obtaining farm loans, farming, or elsewhere and regardless of their present economic circumstances.

Farmers and ranchers who are white are ineligible for loan assistance, regardless of their individual circumstances.

4. Plaintiff Scott Wynn, who is white, has been working his own farm in Jennings, Florida since 2006. Like many other farmers, Mr. Wynn has suffered economic harm as a result of the Coronavirus pandemic. Mr. Wynn holds multiple farm loans, including operating loans from the USDA Farm Service Agency, that would be eligible for loan assistance under Section 1005 if Mr. Wynn were Black, American Indian/Alaska Native, Hispanic, Asian, or Hawaiian/Pacific Islander. But Mr. Wynn is categorically excluded from loan assistance under Section 1005 because he is white.

5. Because Section 1005 excludes him from the loan assistance program based on his race, Mr. Wynn brings this lawsuit to eliminate Section 1005's race-based preferences and to restore the promise of equal treatment under the law.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This action arises directly under the Due Process Clause of the Fifth Amendment. Mr. Wynn also brings this claim under 5 U.S.C. § 702.

7. The Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) and Local Rule 1.04(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the property that is the subject of the action is situated in this district and in the Jacksonville Division. Venue is also proper under 28 U.S.C § 1391(e)(1)(B) because the defendants are officers, employees, and agencies of the United States and a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of property that is the subject of the action is situated in this district.

## PARTIES

*Plaintiff*

9. Plaintiff Scott Wynn is a farmer in Jennings, Florida. Mr. Wynn has been working the farm he owns since 2006. He has farmed crops such as peanuts, sweet potato, corn, and cotton. Today, he farms cattle and hay. Mr. Wynn holds qualifying farm loans under Section 1005. Mr. Wynn is white. But for his race, Mr. Wynn would be eligible for loan assistance under Section 1005.

*Defendants*

10. Defendant Thomas J. Vilsack is the United States Secretary of Agriculture. The Secretary of Agriculture leads the United States Department of Agriculture (USDA), which includes the Farm Service Agency. Section 1005 appropriates to the Secretary of Agriculture "for fiscal year 2021, out of amounts in the Treasury not otherwise appropriated, such sums as may be necessary, to remain available until expended, for the cost of loan modifications and payments under this section." Section 1005 also provides that the Secretary of Agriculture "shall provide a payment" to socially disadvantaged farmers or ranchers on qualifying farm loans. Mr. Vilsack is sued only in his official capacity.

11. Defendant Zach Ducheneaux is the administrator of USDA's Farm Service Agency (FSA). The administrator is the head of the FSA. FSA offers loans to farmers and ranchers, including farm loans as defined in Section 1005. Mr. Ducheneaux is sued only in his official capacity.

## GENERAL ALLEGATIONS

*Section 1005 of the American Rescue Plan Act of 2021*

12. The American Rescue Plan Act of 2021 was signed into law on March 11, 2021.

13. Section 1005 of the Act is entitled "Farm Loan Assistance for Socially Disadvantaged Farmers and Ranchers."

14. Section 1005 appropriates to the Secretary of Agriculture, "out of amounts in the Treasury not otherwise appropriated, such sums as may be necessary, to remain available until expended, for the cost of loan modifications and payments under this section." § 1005(a)(1).[1]

15. Section 1005 directs the Secretary of Agriculture to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021, to pay off the loan directly or to the socially disadvantaged farmer or rancher (or a combination of both), on each (A) direct farm loan made by the Secretary to the socially disadvantaged farmer or rancher; and (B) farm loan guaranteed by the Secretary the borrower of which is the socially disadvantaged farmer or rancher." § 1005(a)(2).

16. Section 1005 defines a farm loan as "a loan administered by the Farm Service Agency under subtitle A, B, or C of the Consolidated Farm and

---

[1] Unless otherwise indicated, all statutory references are to the American Rescue Plan Act of 2021, H.R. 1319.

Rural Development Act (7 U.S.C. 1922 et seq.)" or "a Commodity Credit Corporation Farm Storage Facility Loan." § 1005(b)(1).

17. Farmers and ranchers that do not qualify as "socially disadvantaged farmers and ranchers" are ineligible for farm loan assistance under Section 1005. By contrast, the Secretary must provide loan assistance to socially disadvantaged farmers and ranchers with qualifying loans under Section 1005. § 1005(a)(2).

18. Section 1005 specifies that "the term 'socially disadvantaged farmer or rancher' has the meaning given the term in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. 2279(a))." § 1005(b)(3).

19. 7 U.S.C. 2279 defines "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group." According to the USDA, for purposes of Section 1005, socially disadvantaged groups are: Black, American Indian/Alaska Native, Hispanic, Asian, and Hawaiian/Pacific Islander.[2] This definition is consistent with USDA regulations defining socially disadvantaged groups. *See, e.g.*, 7 C.F.R. § 760.107(b)(1) ("socially disadvantaged group" limited to American

_____

[2] https://www.farmers.gov/americanrescueplan/arp-faq

Indians/Alaskan natives, Asian-Americans, Blacks, Hawaiians/Pacific Islanders, and Hispanics); *id.* § 1410.2(b) ("Socially disadvantaged groups include the following and no others unless approved in writing . . . : (i) American Indians or Alaskan Natives; (ii) Asians or Asian–Americans; (iii) Blacks or African Americans; (iv) Hispanics; and (v) Native Hawaiians or other Pacific Islanders.").

*Statutory Purpose*

20. The 242-page American Rescue Plan bill did not include any congressional findings or statement of legislative purpose related to Section 1005.

21. Section 1005 is similar to Sections 3 and 4 of Senate Bill 278, proposed by Senator Warnock on February 8, 2021. The proposed bill is also known as the "Emergency Relief for Farmers of Color Act of 2021." SB 278 § 1.

22. The stated purpose of Senate Bill 278 was "to address the historical discrimination against socially disadvantaged farmers and ranchers and address issues relating to the Coronavirus Disease 2019 (COVID–19)." SB 278 § 4(a).

23. The proposed congressional findings in Section 2 of Senate Bill 278 did not include any findings of discrimination specific to Asian American farmers or ranchers.

24. The proposed findings in Section 2 of Senate Bill 278 did not include any findings of discrimination specific to Hawaiian or Pacific Islander farmers or ranchers.

25. The proposed findings in Section 2 of Senate Bill 278 did not include any finding that farmers and ranchers who suffered economic losses as a result of the Coronavirus Disease were "socially disadvantaged" farmers or that socially disadvantaged farmers were unable to access other Coronavirus-related relief funds.

26. The proposed congressional findings in Section 2 of Senate Bill 278 assert that "numerous reports over 60 years have shown a consistent pattern of discrimination at the Department of Agriculture against Black farmers, Indigenous farmers, and farmers of color."

27. On March 10, 2021, Defendant Vilsack issued a statement on passage of the American Rescue Plan Act by the U.S. Congress.[3] Defendant

---

[3] https://www.usda.gov/media/press-releases/2021/03/10/statement-agriculture-secretary-tom-vilsack-congressional-passage

Vilsack stated that the "American Rescue Plan provides historic debt relief to Black, Indigenous, Hispanic, and other farmers of color who for generations have struggled to fully succeed due to systemic discrimination and a cycle of debt."

28. On March 25, 2021, Defendant Vilsack provided written testimony to Congress. Referring to the American Rescue Plan Act, Mr. Vilsack explained that the "law provides funding to address longstanding racial equity issues within the Department and across agriculture." Mr. Vilsack added that the law "provides debt relief for socially disadvantaged farmers and ranchers to respond to the cumulative impacts of systemic discrimination and barriers to access that have created a cycle of debt."

29. On March 26, 2021, Defendant Ducheneaux published a blog post entitled "American Rescue Plan Socially Disadvantaged Farmer Debt Payments."[4]

30. Defendant Ducheneaux's blog post stated that "USDA recognizes that socially disadvantaged farmers and ranchers have faced systemic discrimination with cumulative effects that have, among other consequences,

---

[4] https://www.farmers.gov/connect/blog/loans-and-grants/american-rescue-plan-socially-disadvantaged-farmer-debt-payments

led to a substantial loss in the number of socially disadvantaged producers, reduced the amount of farmland they control, and contributed to a cycle of debt that was exacerbated during the COVID-19 pandemic." The post also stated that to "address these systemic challenges, the American Rescue Plan Act of 2021 provides historic debt relief to socially disadvantaged producers including Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

31. Defendant Ducheneaux's blog post stated that "Producers who have worked with USDA's Farm Service Agency previously may have their ethnicity and race on file. A borrower, including those with guaranteed loans, can contact their local USDA Service Center to verify, update or submit a new ethnicity and race designation using the AD-2047." Defendant Ducheneaux and Dewayne Goldmon, a senior adviser on racial equity to the agriculture secretary, stated that socially disadvantaged farmers and ranchers do not have to apply for loan assistance under Section 1005. Mr. Goldmon stated that "AD 2047 is the form that will qualify borrowers for this debt relief. And I cannot emphasize the importance enough of having that form on file." In May 2021, the USDA sent a letter to farmers and ranchers who have not designated details about their demographic information, including their "race and

ethnicity data." The letter stated that "Section 1005 provides benefits specifically for socially disadvantaged farmers and ranchers." It explained that the "definition includes borrowers who are American Indian, Alaskan Native, Asian, Black, African American, Native Hawaiian, or Pacific Islander by race and/or Hispanic or Latino by ethnicity as noted in FSA records."

*Past Efforts to Remedy Discrimination*

32. There has been an extensive federal response to allegations of historical loan discrimination by USDA.

33. The 1990 Farm Bill established the Outreach and Assistance for Socially Disadvantaged Farmers and Ranchers and Veteran Farmers and Ranchers Program ("2501 Program"). Pub. L. 101-624 § 2501. The 2501 Program is intended to "provide outreach and technical assistance for underserved farmers, ranchers, and foresters, in owning and operating sustainable farms and ranches while increasing their participation in USDA programs and services." *Socially Disadvantaged Farmers and Ranchers*, U.S. Dep't of Agriculture, https://www.usda.gov/partnerships/socially-disadvantaged-farmers-and-ranchers (last visited May 18, 2021).

34. "Since 1994, the 2501 Program has awarded 533 grants totaling more than $138 million." *Id.* As USDA's website proclaims, "[t]his funding

has helped reach socially disadvantaged agricultural producers – farmers and ranchers who have experienced barriers to service due to racial or ethnic prejudice." *Id.* The 2018 Farm Bill also extended and increased funding for the 2501 Program.

35. Over a decade ago, a series of class action lawsuits alleging discrimination by USDA in lending to minority farmers and ranchers resulted in payments to farmers and ranchers affected by racial discrimination. In the *Pigford* litigation, the USDA paid out around $1 billion dollars to a class of approximately 23,000 black farmers under the provisions of a consent decree.

36. A subsequent class action settlement provided relief for black farmers who were too late to file claims under *Pigford*. *See In re Black Farmers Discrimination Litig.*, No. 08-0511 (D.D.C. 2011).

37. Similarly, in *Keepseagle v. Veneman*, a court approved a class action settlement in a case brought by Native American farmers and ranchers. Order, No. 99-cv-3119 (D.D.C. April 28, 2011).

38. In 2011, the Department of Justice and USDA announced the establishment of a process to resolve the claims of women and Hispanic farmers and ranchers who asserted that they were discriminated against when seeking USDA farm loans.

39. In 1998, Congress suspended application of the two-year statute of limitations for Equal Credit Opportunity Claims, allowing discrimination claimants to qualify for payments under these settlements based on even decades-old instances of discrimination.

40. In the 2008 farm bill, Congress stated that discrimination claims and class actions brought against USDA should be quickly and fairly resolved. Congress provided $100 million to help settle the *Pigford* discrimination claims and established a moratorium on acceleration and foreclosure proceedings by USDA against any farmer or rancher who filed a discrimination claim.

41. To further support *Pigford*, Congress provided an additional $1.15 billion in funding in the Claims Resolution Act of 2010 to settle the additional claims in the *Pigford II* class action lawsuit.

*Implementation of Section 1005*

42. The USDA's website explains that the types of loans that are eligible for loan assistance under Section 1005 are those made directly by FSA, "including Farm Storage Facility Loans, Direct Farm Ownership Loans, Farm Operating Loans, including Microloans and Youth Loans, Emergency Loans, Conservation Loans, and Soil and Water Loans." Also eligible for

repayment are loans guaranteed by FSA and made by an approved lender, "including Farm Ownership Loans, Farm Operating Loans, and Conservation Loans."

43. Mr. Wynn holds farm loans that would be eligible for loan assistance under Section 1005 but for its "socially disadvantaged" provision. Mr. Wynn's farm loans include Farm Operating Loans made directly by FSA.

44. A USDA webpage entitled "American Rescue Plan Debt Payments FAQ" contains USDA's responses to frequently asked questions about Section 1005. Question 1 asks "[h]ow does USDA define a socially disadvantaged producer?" The answer states that "[t]he American Rescue Plan Act uses Section 2501 of the Food, Agriculture, Conservation, and Trade Act of 1990 as the definition of socially disadvantaged farmers and ranchers, which includes those who are one or more of the following: Black, American Indian/Alaska Native, Hispanic, Asian, and Hawaiian/Pacific Islander. Section 2501 does not include gender. While some women may be eligible due to their race or ethnicity, gender is not an eligible criterion in and of itself, based on the law enacted by Congress."[5]

---

[5] https://www.farmers.gov/americanrescueplan/arp-faq (last updated May 5, 2021).

45. Another frequently asked question on the USDA webpage is: "Are there any similar programs for borrowers who are not socially disadvantaged based on race and ethnicity?" The webpage states: "This American Rescue Plan program is for socially disadvantaged borrowers, as outlined in Question 1."

*Application of Section 1005 to Mr. Wynn*

46. Mr. Wynn is a white farmer. Mr. Wynn is not considered a "socially disadvantaged farmer or rancher" under Section 1005 and is therefore ineligible for loan assistance.

47. Mr. Wynn is not considered a "socially disadvantaged farmer or rancher" as the USDA defines the term and is therefore ineligible for loan assistance under Section 1005.

48. There is no further action Mr. Wynn can take to alter the USDA's determination that white farmers are ineligible for loan assistance under Section 1005.

49. There is no further action the USDA can take, consistent with Section 1005, to make Mr. Wynn eligible for loan assistance under Section 1005.

## COUNT I: VIOLATION OF THE FIFTH AMENDMENT
## TO THE UNITED STATES CONSTITUTION

50. Plaintiff hereby incorporates the prior allegations of this complaint.

51. The Due Process Clause of the Fifth Amendment provides, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This Clause contains an equal protection component applicable to the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Thus, "all racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny." *Adarand Constructors, Inc., v. Pena*, 515 U.S. 200, 227 (1995).

52. Section 1005 violates the equal protection component of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

53. Section 1005 provides farm loan assistance on the basis of racial classifications. Farmers or ranchers who have farm loans and are Black, American Indian/Alaska Native, Hispanic, Asian, or Hawaiian/Pacific Islander are eligible for loan assistance. White farmers and ranchers with farm loans, as defined under Section 1005, are ineligible for loan assistance.

54. Because Section 1005 distributes benefits or burdens on the basis of racial classifications, it is subject to strict scrutiny. *See Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007).

55. Strict scrutiny requires the government to show that its racial classifications (1) further a compelling governmental interest, and (2) are narrowly tailored to further that interest. *See Adarand Constructors*, 515 U.S. at 220.

56. Section 1005's racial classifications are not narrowly tailored to further a compelling governmental interest.

57. Section 1005 is not intended or designed to remedy specific instances of racial discrimination.

58. Section 1005 assumes that all individuals of "socially disadvantaged" racial groups have been subject to racial discrimination. Section 1005 directs the Secretary to provide farm loan assistance to all socially disadvantaged farmers and ranchers with qualifying farm loans.

59. Section 1005 does not limit farm loan assistance to only socially disadvantaged farmers and ranchers that have suffered racial discrimination, let alone racial discrimination in farming, or racial discrimination in obtaining farm loans.

60. Section 1005 directs the Secretary to provide farm loan assistance to socially disadvantaged farmers and ranchers even if any past discrimination that they have suffered has already been remedied by the government.

61. Mr. Wynn is not a "socially disadvantaged" farmer under Section 1005. Section 1005 assumes that individuals who do not belong to a "socially disadvantaged" racial group are not otherwise disadvantaged apart from their race. Farmers and ranchers who do not belong in "socially disadvantaged" racial groups are categorically ineligible for loan assistance under Section 1005. Section 1005 does not provide farm loan assistance to any farmers and ranchers who are otherwise disadvantaged apart from their race.

## COUNT II: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT (Not in accordance with the law – Due Process Clause of the Fifth Amendment)

62. Plaintiff incorporates paragraphs 1-49, and 51-61 herein.

63. The USDA's implementation of Section 1005's socially disadvantaged provisions is not "preliminary, procedural, or intermediate." 5 U.S.C. § 704.

64. The USDA, in accordance with Section 1005, excludes white farmers and ranchers from the category of "socially disadvantaged farmers and ranchers."

65. Section 1005 does not permit USDA to take any additional action to include white farmers and ranchers in the category of "socially disadvantaged farmers and ranchers."

66. The USDA's implementation of Section 1005's socially disadvantaged provisions is reviewable under 5 U.S.C. § 704.

67. The APA prohibits agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A), and those contrary to a constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2)(B). As stated above, the "socially disadvantaged" provisions of Section 1005 violate the equal protection component of the Due Process Clause of the Fifth Amendment. Accordingly, the USDA's implementation of Section 1005 violates the APA.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

1. A judgment declaring that the "socially disadvantaged" provisions of Section 1005 of the American Rescue Plan Act of 2021 violate the Fifth Amendment to the United States Constitution and are otherwise not in accordance with the law under the APA;

2. Preliminary and permanent injunctions prohibiting Defendants from enforcing the "socially disadvantaged" provisions of Section 1005 of the

American Rescue Plan of 2021 and opening eligibility for loan assistance to all farmers or ranchers with qualifying farm loans;

3. In the alternative, preliminary and permanent injunctions prohibiting Defendants from enforcing Section 1005 of the American Rescue Plan of 2021 in its entirety and enjoining Defendants from distributing loan assistance under Section 1005 to farmers and ranchers;

4. An award to Plaintiff of such costs and attorney fees as allowed by law;

5. An award to Plaintiff of $1.00 in nominal damages; and

6. Any other relief that the Court deems just and proper.

DATED:  May 18, 2021.

Respectfully submitted,

PACIFIC LEGAL FOUNDATION

s/ Christina M. Martin
Christina M. Martin,
Fla. Bar No. 100760
Lead Counsel
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone:  (561) 619-5000
Facsimile: (561) 619-5006
Email:  CMartin@pacificlegal.org
Service:
IncomingLit@pacificlegal.org

Wencong Fa, Cal. Bar No. 301679*
Daniel M. Ortner,
Cal. Bar No. 329866*
930 G Street
Sacramento CA 95814
Email:  WFa@pacificlegal.org
Email:  DOrtner@pacificlegal.org

Glenn E. Roper,
Colo. Bar No. 38723*
1745 Shea Center Dr., Suite 400
Highlands Ranch CO 80129
Telephone:  (916) 419-7111
Facsimile: (916) 419-7747
Email:  GERoper@pacificlegal.org

*Attorneys for Plaintiff*
*\* Special Admission Applications Pending*