IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SCOTT WYNN, an individual,

    Plaintiff,

      v.

TOM VILSACK, in his official capacity as
U.S. Secretary of Agriculture; ZACH
DUCHENEAUX, in his official capacity
as Administrator, Farm Service Agency,

    Defendants.

Civil Action
No. 3:21-cv-00514-MMH-JRK

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY PROCEEDINGS**

Section 1005 of the American Rescue Plan Act of 2021, which grants debt relief to farmers and ranchers solely on the basis of race, predictably spawned challenges throughout the country. Scott Wynn, a Florida farmer, pressed his civil rights lawsuit in this Court. Mr. Wynn filed the first motion for preliminary injunction in any of the challenges to Section 1005—and this Court was the first to grant that relief. Defendants previously requested nearly a three-fold extension of the page limits to brief the issues and argued against a nationwide injunction on the ground that it would not allow the issue to percolate throughout the federal courts. But now, after this Court has waded through briefs, issued an opinion, and set an expedited schedule for resolving

1

this case, Defendants seek to stay these proceedings indefinitely in deference to a class action lawsuit in Texas. *See Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.).

Defendants' request should be denied. The Eleventh Circuit has held that stays are unlawful if they are immoderate, and the stay Defendants seek is immoderate because it has no defined end date. The balance of equities also favors proceeding with this case. Defendants seek to deprive Mr. Wynn of the ability to press his claims with his chosen counsel in this Court. By contrast, litigation burdens on Defendants do not constitute undue hardship justifying a stay. Defendants' arguments on judicial economy also fail, and their argument that *Miller* was "first filed" rests on false premises. In *Miller*, the original plaintiff possessed neither farm loans nor standing to press his claims, and the additional plaintiffs were not added until *after* Mr. Wynn filed his complaint and preliminary injunction motion. None of Defendants' cited authorities require a court that first issued a preliminary injunction and first had proper jurisdiction to defer to another district court. Defendants' requested stay is unprecedented, unwarranted, and should be denied.

## BACKGROUND

I.   **Plaintiff Scott Wynn's Targeted Challenge to Section 1005's Race-Based Loan Assistance Program**

Section 1005 of the American Rescue Plan Act of 2021 distributes debt relief solely on the basis of race. Before enactment, one senator called its racial

discrimination "unbelievable" and stated that he didn't know "how that could ever be constitutional."[1] Many farmers agreed. In the months following Section 1005's enactment, farmers across the country brought lawsuits to challenge its constitutionality. *See* ECF No. 44 at 3–4. These farmers—and their varying counsel—have pursued differing strategies and sought different kinds of relief.

Florida farmer Scott Wynn filed his complaint in this Court on May 18, only two months after Section 1005's enactment. ECF No. 1. One week later, Mr. Wynn filed the first Motion for Preliminary Injunction in any of the cases to challenge Section 1005. ECF No. 11. This Court moved quickly—promptly issuing an expedited briefing schedule and setting the motion for hearing. *See* ECF Nos. 14, 16. Defendants then requested leave to "file a response brief of up to 55 pages," "[g]iven the importance of the issues . . . and the quantity of information to be addressed." ECF No. 20 at 2. Defendants also opposed Plaintiff's request for a nationwide injunction, in part because Defendants believed that such an injunction would "prevent[] legal questions from percolating through the federal courts." ECF No. 22 at 40 (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring)). After briefing was complete, the Court heard nearly two hours of argument at an in-person hearing in Jacksonville.

---

[1] Press Release, Sen. Pat Toomey, No Justification for $1.9 Trillion Democrat Spending Bill (Mar. 3, 2020), https://www.toomey.senate.gov/newsroom/press-releases/toomey-no-justification-for-19-trillion-democrat-spending-bill.

After the hearing, this Court on June 23 issued the first preliminary injunction in any case challenging Section 1005. *See* ECF No. 41. In recognition of the magnitude of its decision, this Court ordered the parties "to proceed with the greatest of speed in reaching a final adjudication" and directed them to present the Court with "a proposed schedule to complete any discovery that may be required on an expedited basis as well as a swift deadline for the submission of dispositive motions." *Id.* at 49. The parties provided their respective positions in a joint filing. ECF No. 42. This Court set the close of discovery on December 3, with summary judgment motions due by January 6, 2022. ECF No. 43.

A mere four days after the Court issued its scheduling order, Defendants moved to "stay proceedings in this case until final resolution of the class challenge to Section 1005" in a case now pending in the Northern District of Texas, *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.). ECF No. 44 at 2.[2]

## II. The *Miller* Plaintiffs' Broad Challenge Against Various USDA Programs, Including Section 1005

The case on which Defendants' stay motion is based, *Miller v. Vilsack*, involves a broader challenge to numerous USDA programs, including Section 1005. *See Miller*, ECF No. 1 (filed Apr. 26, 2021).[3] The original complaint

---

[2] Pursuant to the Scheduling Order, Defendants filed their answer on July 14, and the parties exchanged initial disclosures on July 21.

[3] ECF citations in this section refer to filings in *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.).

mentions Section 1005 only once, *id.* ¶ 5, alongside "[n]umerous other federal statutes [that] limit government aid to individuals who qualify as a socially disadvantaged farmer or rancher." *Id.* ¶ 6 (internal quotation marks omitted). The *Miller* complaint thus asks the court to "declare unconstitutional *any* statute limiting the benefits of federal programs to 'socially disadvantaged farmers and ranchers.'" *Id.* ¶ 19 (emphasis added). Mr. Miller is represented by America First Legal, which by its own account is "led by senior members of the Trump Administration **who were at the forefront of the America First movement**."[4] The group believes that "our most fundamental rights and values are being systematically dismantled by an unholy alliance of corrupt special interests, big tech titans, the fake news media, and liberal Washington politicians."[5]

The *Miller* complaint includes three claims. First, it contends that Department of Agriculture programs containing racial exclusions violate both the Constitution and Title VI of the Civil Rights Act of 1964. *See* ECF No. 1 (Claim One). Second, it argues (in the alternative) that the term "socially disadvantaged group" must be construed to include "white ethnic groups that have suffered past prejudice and discrimination." *Id.* (Claim Two). Third, it contends (again in the alternative) that the term "socially disadvantaged

---

[4] https://www.aflegal.org/about (emphasis in original).
[5] *Id.* As stated below, an organization espousing such extreme views cannot properly represent Mr. Wynn's interests.

farmer or farmer" must include individuals that "have any discernable trace of minority ancestry." *Id.* (Claim Three).

Initially, the sole plaintiff and proposed class representative was Sid Miller, the Agriculture Commissioner for the State of Texas (in his personal capacity). *Id.* ¶ 3. Importantly, although Mr. Miller sought to invalidate numerous federal statutes, including the debt relief provisions of Section 1005, he did not allege (and has never alleged) that he holds any farm loans that would be eligible for debt relief under Section 1005. He nonetheless sought to "represent a class of all farmers and ranchers in the United States who are currently excluded from the Department's interpretation of 'socially disadvantaged farmer or rancher.'" *Id.* ¶ 31.

*After* Mr. Wynn had filed his complaint and moved for a preliminary injunction in this case, Mr. Miller filed an amended complaint, moved to certify two classes, and moved for a preliminary injunction. ECF Nos. 11–13, 17–18 (June 2, 2021). Mr. Miller's amended complaint raises the same claims and sought the same relief as his original complaint, but added four plaintiffs who, unlike Mr. Miller, allege that they hold farm loans that would be eligible for debt relief under Section 1005. ECF No. 11 ¶¶ 19–23. The amended complaint also (for the first time) sought to certify a "second and more narrow class"— with only the new plaintiffs as class representatives—that includes "all farmers and ranchers in the United States who are encountering, or who will

6

encounter, racial discrimination from the United States Department of Agriculture on account of [Section 1005]." *Id.* ¶ 42.

On July 1, the *Miller* court certified the two classes proposed by the *Miller* plaintiffs and granted a preliminary injunction against Section 1005. ECF No. 60. In so doing, the *Miller* court cited this Court's preliminary injunction opinion, which was submitted as supplemental authority. *See Miller*, ECF No. 44.[6]

On July 7, the *Miller* court ordered the parties to confer and submit a joint notice detailing "a proposed plan for the conduct of discovery, Plaintiffs' notification of class members, and whether the parties anticipate the case going to trial." ECF No. 66. The joint report indicates that the parties in *Miller* "do not believe factual discovery is necessary for the § 1005 constitutional claim" and set the completion of briefing for cross-motions for summary judgment in April 2022. ECF No. 70 at 2–3 (attached as Exhibit 1).

## STANDARD OF REVIEW

"The burden is on the movant to show that a stay is appropriate." *Garmendiz v. Capio Partners, LLC*, 8:17-cv-00987, 2017 WL 3208621, at *1. (M.D. Fla. July 26, 2017) (citation omitted). The movant "must make out a clear

---

[6] Following the preliminary injunction decision, the parties in *Miller* have quarreled about whether USDA should be allowed to "send[] letters to eligible borrowers." *See Miller*, ECF No. 63 at 2. *But see Wynn*, ECF No. 41 at 49 & n.19 (noting that this Court's order "does not enjoin Defendants from continuing to prepare to effectuate the relief under Section 1005 in the event it is ultimately found to be constitutionally permissible").

case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to [someone] else." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936)). Courts generally consider "(1) whether the stay would prejudice the non-moving party, (2) whether the proponent of the stay would suffer a hardship or inequity if forced to proceed, and (3) whether granting the stay would further judicial economy." *Id.* Any stay must not be "immoderate." *Ortega Trujillo v. Conover & Co. Comms., Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000).

## ARGUMENT

## I.   Defendants' Proposed Stay Should Be Denied as Immoderate

Under longstanding Eleventh Circuit precedent, a stay pending the resolution of related proceedings in another forum should be denied if it is not properly limited; i.e., if it is "immoderate." *Ortega Trujillo*, 221 F.3d at 1264 (quotations omitted). In considering whether a proposed stay is immoderate, the court examines both the scope of the stay (including its potential duration) and the reasons offered by its proponent. *See id.*

Here, the proposed stay is "immoderate" because it is "indefinite in scope." *Id.* (footnote omitted). In *Ortega Trujillo*, the Eleventh Circuit held that a stay was immoderate and indefinite when, in deference to a Bahamian court, the stay "appears to expire only after a trial of the Bahamian case and the exhaustion of appeals in that case." *Id.* Likewise, Defendants request a stay of

this case "pending resolution of the [*Miller*] case on the merits." ECF No. 44 at 1. But Defendants cannot offer even a guess as to when the *Miller* case will be finally resolved. The parties will not complete briefing until April 2022. And with appeals almost certain in a case like this one, "resolution of the [*Miller*] case on the merits" may take several years. *See Garmendiz*, 2017 WL 3208621, at *2 ("[T]he potential for either party . . . to request a review by the circuit court *en banc* and/or seek a writ of *certiorari* to the United States Supreme Court will further delay any concrete resolution to the issue.").

Defendants offer "no reason sufficient to justify" the "indefinite stay" that they request. *See Ortega Trujillo*, 221 F.3d at 1265 (holding that "the interests of judicial economy alone are insufficient to justify such an indefinite stay"). Nor do Defendants explain how a stay would simplify any issues in this case. *Garmendiz*, 2017 WL 3208621, at *3 & n.3 (considering whether a stay would simplify the issues). Instead, Defendants contend that the parties in this case will "be bound by any class-wide judgment" in *Miller*. ECF No. 44 at 10. Thus, in Defendants' view, a stay would not simplify any issues, but would channel all the issues to be conclusively decided in another case, leaving nothing to do here except enter a judgment once *Miller* concludes.[7] The proposed stay should be denied because it is immoderate.

---

[7] Although Defendants intimate that decertification of the classes in *Miller* could change that calculus, they have declined to state whether they will appeal the class certification. *See Miller*, ECF No. 44 at 7 n.6.

## II.    Defendants' Proposed Stay Should Be Denied Under the Factors Established in This Jurisdiction

Even if Defendants' proposed stay were not immoderate, it does not satisfy the three factors for granting a stay: "(1) whether the stay would prejudice the non-moving party, (2) whether the proponent of the stay would suffer a hardship or inequity if forced to proceed, and (3) whether granting the stay would further judicial economy." *Garmendiz*, 2017 WL 3208621, at *1.

### A.    A Stay Would Prejudice Plaintiff

A stay would prejudice Mr. Wynn by depriving him of the ability to litigate his chosen claims, with his chosen counsel, in his chosen forum. There are significant differences between this case and *Miller* that counsel against a stay. First, Mr. Wynn has only challenged Section 1005. By contrast, *Miller* involves a broad challenge seeking to declare unconstitutional multiple statutes that limit the benefits of federal programs to socially disadvantaged farmers and ranchers. Second, the *Miller* plaintiffs raise a Title VI claim and two alternative claims that would require a court to evaluate the "social disadvantage" of both various white racial groups and those with "any discernible trace of minority ancestry." These broader (and weaker) claims dilute the simple strength of Mr. Wynn's challenge to Section 1005.[8] Third,

---

[8] The recent joint filing in *Miller* indicates that plaintiffs there may intend to pursue claims "*only* against the continued enforcement of the racial exclusions in section 1005 of the American Rescue Plan Act," Exh. 1 at 2, but that is inconsistent with the broader relief that the *Miller* plaintiffs sought in their amended complaint, *see Miller*, ECF No. 11. The *Miller*

Mr. Wynn raises unique arguments that are not presented in *Miller*, including a count under the Administrative Procedure Act and a request for nominal damages. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021) (an award of nominal damages can redress past injury and avoid mootness problems).

Mr. Wynn would also be prejudiced by the *Miller* plaintiffs' stated intent to avoid fact discovery before filing motions for summary judgment. *See* Exh. 1 at 2 ("The Parties do not believe factual discovery is necessary for the § 1005 constitutional claim."). Although Mr. Wynn does not anticipate extensive discovery, he does not wish to dispense with fact discovery entirely before filing cross-motions for summary judgment. Yet, despite the lack of fact discovery in *Miller*, the parties there have agreed to proceed at a more leisurely pace, which subjects Mr. Wynn to unnecessary delay. Even without fact discovery, the proposed scheduling order in *Miller* anticipates briefing on cross-motions for summary judgment to be completed more than two months after they would be completed in this case. *Compare* Exh. 1, *with Wynn*, ECF No. 43 (scheduling order).

---

plaintiffs also state "that they will likely file a Second Amended Complaint" that omits their alternative claims. Exh. 1 at 2. But the plaintiffs' argument that the debt relief program should be construed to include farmers and ranchers of certain white ethnic groups raises serious doubt as to whether their view of the equal protection guarantee is correct. *See Miller v. Johnson*, 515 U.S. 900, 911 (1995) (requiring the government to treat all persons as individuals, not "as simply components of a racial . . . class"). Finally, the *Miller* plaintiffs' chief claim includes a claim under Title VI. Yet that theory raises unnecessary issues, as many courts have held that Title VI does not apply to programs conducted directly by federal agencies. *See, e.g., Halim v. Donovan*, 951 F. Supp. 2d 201, 207 (D.D.C. 2013).

A stay would also be prejudicial because the parties and this Court have already spent significant resources in litigating this case—due in part to Defendants' own litigation posture. *Cf. Garmendiz*, 2017 WL 3208621, at *2 ("The Defendant argues that the stay will not unduly prejudice the Plaintiff because this Motion is brought before any significant litigation or resources have been expended."). The parties diligently briefed this case on an expedited basis, with Defendants zealously defending Section 1005 in their expanded brief on Plaintiff's Motion for Preliminary Injunction and in lengthy oral argument. This Court promptly issued a thorough preliminary injunction decision, which has served as an exemplar for three federal courts—in Tennessee, in Wisconsin, and in *Miller* itself. *Holman v. Vilsack*, 21-cv-01085, ECF No. 41 at 12–13 (W.D. Tenn. July 8, 2021) (discussing *Wynn* at length); *Faust v. Vilsack*, 21-cv-00548, ECF No. 49 at 2–4 (E.D. Wis. July 6, 2021) (applauding this Court's "far more thorough analysis of the issue given the record before it"); *Miller*, ECF No. 60 at 18. And the parties here are poised to continue to move quickly. By the time Defendants requested a stay, this Court had already issued a scheduling order calling for dispositive motions to be briefed by January 2022. Defendants have already answered the complaint. And the parties have exchanged initial disclosures and are ready to begin discovery. The parties' diligence in litigating this case counsels against a stay.

A stay would also prejudice Mr. Wynn by depriving him of his chosen counsel. Mr. Wynn is represented by a public interest organization with a long track record of advocating for equality under the law. By contrast, America First Legal is closely associated with policies espoused by some members of the Trump Administration, including overtly partisan rhetoric.[9] Defendants should not be allowed to force Mr. Wynn to be associated with ideologically incompatible counsel when he is already represented by his preferred counsel.[10] Put simply, it is critical for Mr. Wynn to be represented by his chosen representative as a named plaintiff in his own action. Defendants seek instead to funnel Mr. Wynn as an unnamed plaintiff in another action in Texas—where counsel has litigated the case differently, has never communicated with Mr. Wynn, purportedly represents thousands of unnamed class members, yet believes that individualized notice to those members is unnecessary at this

---

[9] *See, e.g.*, *Doing the Bidding of Open Border Radicals, Biden's DOJ Again Issues Another Disastrous Immigration Decision*, https://www.aflegal.org/news/doing-the-bidding-of-open-borders-radicals-bidens-doj-again-issues-another-disastrous-immigration-decision (America First Legal, July 15, 2021) (stating that the Attorney General is "[n]ot content with opening the floodgates for illegal immigration through ending nearly every successful policy that secured the border under the Trump Administration").

[10] Indeed, to do so would raise serious First Amendment concerns. *See Pa. Prof'l Liab. Joint Underwriting Ass'n v. Wolf*, 509 F. Supp. 3d 212, 229 (M.D. Pa. 2020) ("The general right to hire and consult with counsel of choice in civil litigation falls within the ambit of the First Amendment."), appeal filed Jan. 28, 2021; *cf. Roberts v. U.S. Jaycees*, 468 U.S. 609, 622–23 (1984) (explaining that "freedom of association ... plainly presupposes a freedom not to associate").

point. Exh. 1 at 4; *see also Miller*, Memo in Support of Class Cert., ECF No. 13 at 2 (indicating that the nationwide class comprises at least 21,000 farmers).[11]

## B. Defendants Would Not Suffer Undue Hardship or Inequity if Required to Proceed With This Case

Defendants have failed to meet their "burden of establishing that [they] will suffer a hardship or inequity if forced to proceed." *Garmendiz*, 2017 WL 3208621, at *2. Defendants assert that "requiring the Defendants to defend Plaintiff's claim in this Court and the class action in *Miller* at the same time, with the potential for different case schedules, would drain the courts' and the Government's resources without any apparent benefit to Plaintiff." *Wynn*, ECF No. 44 at 11. But conclusory allegations that this case will not "benefit" Plaintiff are simply false. *See supra* at Arg. II.A.

Defendants' contention that this case would unduly "drain" their or the Court's resources also lacks merit. The parties and the Court have already, in part at Defendants' urging, spent substantial resources on the case. Likewise, the Court has already delved deeply into the relevant history and Defendants'

---

[11] To be sure, Mr. Wynn intends to request to opt out of the *Miller* classes. *See Penson v. Terminal Transp. Co., Inc.*, 634 F.2d 989 (5th Cir. 1981) (recounting a number of 23(b)(2) class actions that have provided for opt-outs to "ameliorate any 'antagonistic interests' between the class representatives and the absent members" and to "permit the class members to seek monetary relief in individual actions if they so chose"). Defendants' argument that Mr. Wynn would necessarily be bound by a judgment impacting another class raises a "serious possibility" of a due process violation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). But irrespective of Mr. Wynn's ability to opt out of the *Miller* class, *this* Court should deny Defendants' stay motion.

arguments in ruling on the motion for preliminary injunction—an effort that would be wasted if Defendants' stay motion were granted. And going forward, neither party expects significant discovery. *See Wynn*, ECF No. 42. In any event, "being required to defend a lawsuit does not constitute a hardship or inequity." *Garmendiz*, 2017 WL 3208621, at *2.[12]

## C.  A Stay Would Not Further Judicial Economy

Defendants cannot meet their "burden of establishing that judicial economy is best served by ordering a stay." *Garmendiz*, 2017 WL 3208621, at *3. "Courts have considered the potential to simplify and streamline issues, together with the reduction of the financial burden on the parties and the Court, as factors in determining whether a stay will preserve judicial economy." *Id.* In *Garmendiz*, the court cautioned that "[f]ar from simplifying the Court's analysis, granting a stay under these circumstances would set unwise precedent that every time a controversial issue is raised on appeal, all related or similar cases must be halted pending the appellate court's ruling." *Id.* Similarly here, granting a stay would set unwise precedent that related or similar cases must be halted every time an important issue is raised in another

---

[12] Defendants complain about "duplicative requests for nationwide preliminary injunctions." But a preliminary injunction has already been issued in this case. In fact, after this Court became the first court to preliminarily enjoin enforcement of Section 1005, Defendants urged three federal courts to refrain from issuing "duplicative" injunctions. Although one court agreed with Defendants, two others—including the court in *Miller*—found Defendants' arguments to be groundless. *Miller*, ECF No. 60 at 21; *Holman*, ECF No. 41 at 21.

district court, or that any time one court certifies a class, all other courts must halt any related proceedings and defer. In this setting, the Court should be "equally unconvinced that the stay would meaningfully conserve costs for the parties or the Court." *Id.* As mentioned above, the parties and the Court in this case have *already* spent substantial resources.

Defendants assert that this Court should defer to the *Miller* litigation because it was the first-filed case, ECF No. 44 at 9–10, but that is wrong on the facts and the law. It is true that "where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). But under the relevant analysis, *this* is the first-filed case. That is because the first-filed rule prioritizes "the first court in which jurisdiction attaches." *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018) (quotation omitted). The original complaint in *Miller* was nominally filed first, but it featured a single plaintiff who had no farm loans and thus would have lacked standing to challenge Section 1005.[13] The amended complaint in *Miller*

---

[13] It makes no difference that the initial *Miller* complaint sought to certify a single class, which purportedly includes those who have been excluded from the definition of social disadvantage. It is plain that the only "class representative" in the initial complaint did not have standing to challenge Section 1005. There is debate among the federal courts on whether all unnamed class members must have standing, but no dispute that there is a jurisdictional defect where, as in *Miller*, the named class representative does not have standing. *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768–69 (5th Cir. 2020).

remedied that defect by adding plaintiffs with standing, but that document was filed over two weeks *after* the complaint in *Wynn*. And the *Wynn* complaint was filed well before the *Miller* plaintiffs even filed a motion for class certification, let alone before the Texas court granted it.

In any event, the first-filed rule "is not meant to be rigid, mechanical, or inflexible, but is to be applied in a manner that best serves the interests of justice." *Vital Pharmaceuticals, Inc. v. Derek Andrew, Inc.*, 07-61177-CIV, 2007 WL 9710943, at *3 (S.D. Fla. Dec. 18, 2007). Even if *Miller* were the first-filed case, a host of "equitable considerations" would call for "not applying the first-to-file rule" in this case. *Wakaya Perfection*, 910 F.3d at 1127; *see also id.* at 1124 (listing inequitable conduct, bad faith, anticipatory suits, and forum shopping as a non-exhaustive list of equitable considerations). Not long ago, Defendants urged almost a three-fold extension in page limits in opposing Mr. Wynn's Motion for a Preliminary Injunction. *See Wynn*, ECF No. 20. Defendants further argued in this Court against a nationwide injunction because they believed that it would "prevent[] legal questions from percolating through the federal courts." ECF No. 22 at 40 (quoting *Trump v. Hawaii*, 138 S. Ct. at 2425 (Thomas, J., concurring). But now, Defendants have assumed the opposite stance by arguing that this case should be stayed so that only one challenge to Section 1005 can proceed. They are wrong again. Percolation "permits the airing of competing views that aids [the federal courts'] own

decisionmaking process." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of a stay). And should the issue reach the Supreme Court, "diverse opinions from[] state and federal appellate courts may yield a better informed and more enduring final pronouncement by [the Supreme] Court." *Arizona v. Evans*, 514 U.S. 1, 23 n.1 (1995) (Ginsburg, J., dissenting). In addition to Defendants' inequitable conduct, there would be due process concerns with depriving Mr. Wynn of the ability to press his independent arguments with his chosen legal counsel. Finally, the fact that this Court's preliminary injunction opinion laid the groundwork for the subsequent preliminary injunction issued in *Miller* also justifies denying Defendants' motion to stay proceedings.

## III. Defendants' Cited Precedents Are Unpersuasive

Defendants cite a panoply of out-of-circuit cases in calling for a stay, but a closer look reveals that those cases are inapposite here. *See* ECF No. 44 at 12–15. For instance, Defendants do not claim that any of the cases they cite involved one court deferring to what is properly understood as a later-filed class action in another court, nor do they point to a case that involves a court staying a case after it had reviewed briefs, heard oral argument, and issued an opinion granting a plaintiff's motion for preliminary injunction.

Contrary to Defendants' argument, the First Circuit's decision in *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977), does not

18

"illustrate[] the propriety of a stay in circumstances strikingly similar to this case." ECF No. 44 at 13. Unlike in this case, where a preliminary injunction has already issued, the district court in *Taunton Gardens* was only considering a motion for preliminary injunction by the time a *final judgment* in a concurrent case had been issued. *See Taunton Gardens Co. v. Hills*, 421 F. Supp. 524, 525–26 (D. Mass. 1976) (referencing *Underwood v. Hills*, 414 F. Supp. 526 (D.D.C. 1976)). And in contrast to the immoderate stay urged by Defendants in this case, the First Circuit noted that "the duration of the stay [was] adequately circumscribed by reference to the determination of the appeal presently pending." *Taunton Gardens*, 557 F.2d at 879.

The Second Circuit's unpublished decision in *Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004), is similarly unhelpful to Defendants. Neither Defendants nor the Second Circuit elaborate on the facts in *Mackey*, but the briefs reveal that two separate classes that included the plaintiffs in *Mackey* were certified before the plaintiffs filed their complaint. *See* Br. of N.Y. State Ed. Dep't*, Mickey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 03-7860, 2004 WL 3438192 (filed Mar. 16, 2004). The district court in *Mackey* did not consider, much less decide, a motion for preliminary injunction in that case. *See id.* And because both classes, like *Mackey*, were pending in federal courts in New York, the benefits of percolation applied far less in *Mackey* than in this case.

Defendants' district court cases fare no better. Neither the parties nor the court expended significant resources in *Jiaming Hu v. U.S. Dep't of Homeland Sec.*, 4:17-cv-2363, 2018 WL 1251911 (E.D. Mo. Mar. 12, 2018), before a stay was entered. The *Hu* litigation lagged behind the class action raising the same claims, with the complaint in *Hu* being filed over three months after the complaint and two months after the motion for preliminary injunction were filed in a parallel case. *See Nio v. U.S. Dep't of Homeland Sec.*, 323 F.R.D. 28 (D.D.C. 2017). And in contrast to the parties' diligent efforts here, the plaintiff's case in *Hu* lingered for months before the class in *Nio* was certified, and Defendants in *Hu* moved to dismiss. None of the other cases cited by Defendants justify staying this case. *See Aleman ex rel. Ryder Sys., Inc. v. Sancez*, 21-cv-20539, 2021 WL 917969, at *2 (S.D. Fla. Mar. 10, 2021) (not addressing a stay motion); *Richard K. v. United Behavioral Health*, 18-cv-6318, 2019 WL 3083019, at *5 (S.D.N.Y. June 28, 2019), report and recommendation adopted, 18-cv-6318, 2019 WL 3080849 (S.D.N.Y. July 15, 2019) (deferring to a class action lawsuit filed over four years before the complaint in *Richard K.*).

## CONCLUSION

Defendants' Motion to Stay Proceedings should be denied.

DATED:  July 26, 2021.

Respectfully submitted,

PACIFIC LEGAL FOUNDATION

           s/ Wencong Fa

Christina M. Martin        Wencong Fa*
Fla. Bar No. 100760         Cal. Bar No. 301679
4440 PGA Blvd., Suite 307    Lead Counsel
Palm Beach Gardens, FL 33410   Daniel M. Ortner*
Telephone: (561) 619-5000    Cal. Bar No. 329866
Facsimile: (561) 619-5006     930 G Street
Email: CMartin@pacificlegal.org   Sacramento CA 95814
                                        Email: WFa@pacificlegal.org
                                        Email: DOrtner@pacificlegal.org

                                        Glenn E. Roper*
                                        Colo. Bar No. 38723
                                        1745 Shea Center Dr., Suite 400
                                        Highlands Ranch CO 80129
                                        Telephone: (916) 419-7111
                                        Facsimile: (916) 419-7747
                                        Email: GERoper@pacificlegal.org

                                        *Attorneys for Plaintiff*
                                        *Special admission

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2021, I submitted the foregoing to the Clerk of the Court via the District Court's CM/ECF system, which will provide notice of the submission of this document to all counsel of record.

 s/ Wencong Fa
Wencong Fa*
Cal. Bar No. 301679
Lead Counsel
* Special Admission
