IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| SCOTT WYNN, an individual, | Civil Action<br>No. 3:21-cv-00514-MMH-JRK |
| Plaintiff, | |
| v. | |
| TOM VILSACK, in his official capacity as U.S. Secretary of Agriculture; ZACH DUCHENEAUX, in his official capacity as Administrator, Farm Service Agency, | |
| Defendants. | |

**PLAINTIFF'S SURREPLY IN RESPONSE
TO MOTION TO STAY PROCEEDINGS**

## INTRODUCTION

This Court should exercise its "broad discretion" to deny Defendants' Motion to Stay Proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Edgewater House Condo. Ass'n v. City of Fort Lauderdale, Fla.*, 825 F. App'x 658, 662 (11th Cir. 2020) (reviewing district court's denial of a stay under the "abuse of discretion" standard) (citing *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982). This case is significantly closer to the finish line than any other challenge to Section 1005. No other case—including *Miller*—even has a scheduling order in place. This case has had one in place for months, and the parties are deep into discovery.

It is no accident that this case is proceeding more swiftly than the others. In June, this Court was the first to issue a preliminary injunction enjoining Defendants from enforcing Section 1005. In so doing, this Court directed the parties to "proceed with the greatest of speed in reaching a final adjudication," ECF No. 41 at 48, in order to "provide clarity to the large number of socially disadvantaged farmers and ranchers who were expecting relief," ECF No. 43 at 2. That is exactly what the parties have done. Further, the Court's scheduling order requires the parties to fully brief dispositive motions by January 22, 2022—over two months before even the *proposed* deadline in

1

*Miller*, No. 4:21-cv-00595-O. *See* ECF No. 49-1.[1]

There is no risk of inconsistent judgments here, because a *subsequent* judgment in *Miller* would not bind Mr. Wynn. *See Stevenson v. Int'l Paper Co., Mobile, Ala.*, 516 F.2d 103, 108–09 (5th Cir. 1975); *Guild Wineries and Distilleries v. Whitehall Co.*, 853 F.2d 755, 761 (9th Cir. 1988) (stating ordinary rule that first case to judgment is afforded preclusive effect). However, there is a substantial risk of prejudice to Mr. Wynn if the stay is granted. He would likely be bound to the judgment in *Miller*—a case in which he has no say.

Nor have the Defendants met their "burden of establishing [the] need" for a stay. *Jones*, 520 U.S. at 708. First, that the federal government has to defend lawsuits in multiple jurisdictions is hardly unprecedented and does not constitute an undue burden. When the federal government adopts a nationwide program raising serious constitutional concerns, it often faces multiple lawsuits across the nation.[2] Second, the "first-filed rule," which must be applied in "a manner that best serves the interests of justice." *Vital Pharms.*,

---

[1] The parties in *Holman*—where the government's stay motion was also denied—disagree as to the briefing schedule. *Holman v. Vilsack*, No. 21-1085, ECF No. 51. But both parties' proposed deadlines come after this Court's. *See id.*; *see also* ECF No. 54 (court order setting scheduling conference for October 7).

[2] Just last year the government defended multiple lawsuits spanning several jurisdictions in cases involving Trump immigration rules, *see City of Providence v. Barr*, 954 F.3d 23 (1st Cir. 2020); *City of Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020); *City of Philadelphia v. Att'y Gen. of U.S.*, 916 F.3d 276 (3d Cir. 2019); *City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019); *City & Cty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020). Indeed, other famous examples abound, like the challenges to the Affordable Care Act, the CDC eviction moratorium, or the Waters of the United States Rule to name a few.

2

*Inc. v. Derek Andrew, Inc.*, No. 07-61177-CIV, 2007 WL 9710943, at *3 (S.D. Fla. Dec. 18, 2007), should not favor a lawsuit rushed to court without a proper plaintiff.[3] Third, Defendants' claim that Mr. Wynn is trying to litigate in two forums simultaneously, ECF No. 59 at 1, marks the apotheosis of irony. Defendants are *opposing* Mr. Wynn's request to opt out of the classes in *Miller*. *Miller*, ECF No. 78 at 2. Fourth, and finally, although the government fears the specter of "inconsistent judgments" today, it lauded the benefits of percolation not long ago. ECF No. 22 at 40.

Defendants have sought stays in every other challenge to Section 1005. Although a few courts have granted those motions, the only other court to issue a nationwide preliminary injunction—which it issued after this Court had done so—denied the government's stay motion. *See Holman*, 2021 WL 3354169, at *3. This Court should do likewise, and exercise its sound discretion to deny Defendants' motion.

## I. Defendants' Indefinite Stay Is Immoderate

A stay must not be "immoderate." *Ortega Trujillo v. Conover & Co. Comms., Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000). Defendants do not dispute

---

[3] Defendants do not dispute that the sole plaintiff in the initial *Miller* complaint did not have a farm loan eligible for forgiveness. They do not disagree that a farm loan is a prerequisite for standing to challenge Section 1005. Nor do they dispute that by the time *Miller* was amended to include plaintiffs with standing, Mr. Wynn had already filed his complaint and motion for preliminary injunction in this case.

3

that their proposed stay is indefinite, *see* ECF No. 59 at 3, but instead argue that an indefinite stay is justified here for several reasons. None is persuasive.

Defendants' citation to courts that have exercised their discretion to stay cases in favor of parallel class actions is unpersuasive. ECF No. 59 at 1. The cases cited by Defendants involved slow-moving plaintiffs who had their cases stayed in favor of parallel class actions that were proceeding to judgment more quickly. *See* ECF No. 49 at 18–20. The converse is true here. Mr. Wynn is not a latecomer, but was the first to obtain a preliminary injunction, and is expected to be the first to obtain a final decision in any challenge to Section 1005. In circumstances such as these, a stay is plainly unwarranted.

For example, the Seventh Circuit denied a stay where there were *overlapping class actions* with plaintiffs who are members of multiple classes. *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 837–38 (7th Cir. 1999). As Judge Easterbrook explained, "[p]arallel cases often seek the same relief. There's nothing peculiar about class actions." *Id.* at 838. And in such circumstances, a court *might* stay a later-filed case, but it may also choose to "press forward" and allow cases to "proceed in parallel." *Id.* A preclusive effect may apply when a case reaches final judgment, but a district court should not "jump the gun just to avoid all possibility of inconsistent outcomes." *Id.*

## II. A Stay Would Prejudice Mr. Wynn Without Avoiding Undue Burden to Defendants or Serving the Interests of Judicial Economy

### A. A Stay Would Prejudice Mr. Wynn

Defendants' reply underscores how a stay would prejudice Mr. Wynn. Defendants seek to stay this case so that Mr. Wynn will be bound by a judgment in *Miller*. ECF No. 44 at 8; *see also Miller*, ECF No. 78 at 2 (stating that Defendants oppose Mr. Wynn's request to opt-out in *Miller*). But if this Court issues its judgment before *Miller*—which it likely will—*Miller* will have no effect on Mr. Wynn's claims. *See Guild Wineries*, 853 F.2d at 761 (first judgment is afforded preclusive effect). Defendants are thus mistaken when they deride the efforts that the parties and this Court have expended as a "sunk cost." ECF No. 59 at 14. It is precisely *because* of those efforts that this case is proceeding swiftly to final judgment.

A stay is unwarranted because it would deprive Mr. Wynn of the opportunity to obtain judgment in a case he is litigating, and instead bind him to the judgment in *Miller*—a case in which Mr. Wynn does not control which arguments to press, which concessions to make, how quickly to move, and which appeals to take.[4]

---

[4] This is hardly an abstract concern. Just two days ago, counsel for the plaintiffs in *Miller* requested a two-week extension to respond to the government's motion to dismiss, stating that in August, he had been "consumed with litigation responsibilities" for another case—and is now "simultaneously dealing with ongoing emergency proceedings in 11 separate lawsuits." *Miller*, ECF No. 79 at 1.

5

There have already been meaningful differences in litigation strategy. The *Miller* plaintiffs, unlike Mr. Wynn, have chosen to forgo fact discovery. *See* ECF No. 49-1 at 2. Defendants' counterargument that there is no threat of "fading of memories or a loss of evidence" in this case misses the point. ECF No. 59 at 13. The proposed stay would bind Mr. Wynn to a judgment without *any* discovery. There is therefore a greater risk of prejudice than there would be in a case in which discovery is simply delayed. The "relevant evidence" would not just "be more difficult to obtain due to the passage of time." *Garmendiz v. Capio Partners, LLC*, No. 17-987, 2017 WL 3208621, at *2 (M.D. Fla. July 25, 2017). It would be forever impossible to obtain.

Further, although the plaintiffs in *Miller* and Mr. Wynn are pursuing similar remedies, the pleadings reveal stark differences in rhetoric and litigation strategy. For example, the *Miller* plaintiffs argued that white ethnic *groups* must be recognized as socially disadvantaged and urged the adoption of what is essentially a "one drop" rule. *See* ECF No. 49 at 5–6. And while the *Miller* plaintiffs will "likely file a Second Amended Complaint" that omits those alternative claims, *id.* at 10–11 & n.8, the fact that they pursued them reflects serious differences in how the *Miller* plaintiffs view the issues.[5] *See Wynn*, ECF

---

[5] For that reason, it matters not one bit that the *Miller* court did not certify classes to pursue those disreputable alternative claims. Further, that the parties' joint report in *Miller* provides for notice about class certification is beside the point. ECF No. 59 at 10 & n.6. The report does not require class counsel to regularly communicate with Mr. Wynn, provide him with documents, or inform him that he could request an opt-out. ECF No. 49-1 at 4.

6

No. 1 at ¶ 1 ("The Constitution's promise of equal justice under the law is that the government will treat people as *individuals*.") (emphasis added); ECF No. 49 at 13 & n.9 (noting the overtly partisan rhetoric of the group representing the *Miller* plaintiffs).[6]

### B. Defendants Would Not Suffer Undue Hardship or Inequity if Required To Proceed

Defendants fail to present any evidence of concrete hardships or inequities they would suffer if required to proceed with this case. Nor can they. Merely defending a lawsuit is not an undue hardship. That "is particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before [the Court]." *Ctr. For Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 21–22 (D.D.C. 2019) (denying federal agency's request for a stay).

Defendants contend that a stay must be granted to facilitate the "orderly administration of the class action." ECF No. 59 at 1. But they do not provide any detail about what type of disorder would follow if Mr. Wynn were permitted to proceed here. Courts routinely exercise their discretion to allow

---

[6] It is also undisputed that Mr. Wynn, unlike the *Miller* plaintiffs, asserted a request for nominal damages and that such a request avoids mootness problems. *See id.* at 11; ECF No. 59 at 9–10. If Defendants alter the program at the eleventh hour, *see New York State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525 (2020), Mr. Wynn should be allowed to continue to the merits based on a request he included in the complaint, rather than having his claims mooted because the *Miller* plaintiffs did not include that same request.

7

class members to opt out of Rule 23(b)(2) classes, *see* ECF No. 49 at 14 & n.11. More to the point, the plaintiff in *Holman*—a separate challenge to Section 1005—is already proceeding to the merits. The *Holman* court denied the stay even where the plaintiff has not requested to opt out of the classes certified in *Miller*. *See Holman,* 2021 WL 3354169, at *3.[7]

Defendants also raise the "risk of inconsistent judgments" canard. There is no risk. As explained above, the first decision to judgment between this case and *Miller* will presumably be the one that determines Mr. Wynn's rights. Therefore, this Court should deny the stay so that Mr. Wynn can have his rights determined in his own case.

Finally, Defendants complain of "duplicative litigation," but it is hardly unusual for a nationwide federal program to give rise to lawsuits across the country in various district courts. *See supra* n.2.[8] Given the unique position of the federal government, it "is more likely than any private party to be involved in lawsuits against different parties which nonetheless involve the same legal issues." *United States v. Mendoza*, 464 U.S. 154, 160 (1984). Defendants have failed to establish any hardship or inequity.

---

[7] Denying Defendants' Motion would not require this Court to "second guess" the *Miller* Court's conclusion that class members will generally be adequately represented by class counsel, ECF No. 59 at 13. It would only allow this case to proceed so that Mr. Wynn will be fully represented by his chosen counsel.

[8] Moreover, to the extent the cases are duplicative, it is the *Miller* plaintiffs who will likely amend their complaint to raise the arguments that Mr. Wynn has raised all along.

8

### C.  The First-Filed Rule Does Not Counsel in Favor of a Stay

Defendants have not met their "burden of establishing that judicial economy is best served by ordering a stay." *Garmendiz*, 2017 WL 3208621, at *3. Defendants rest almost exclusively on the first-filed rule,[9] ECF No. 59 at 15, but that does not apply here because *Miller* was only nominally filed first, *see supra* n.3. At a minimum, Defendants concede that a court may exercise its discretion to not apply the first-filed rule in light of compelling circumstances or equitable considerations. *See id.* There are several such considerations that counsel against a stay in this case.

***First***, Defendants do not disagree that the sole initial plaintiff in *Miller* did not have standing to challenge Section 1005. This Court should not reward such tactics by deferring to *Miller*.

***Second***, Defendants argued against class certification in *Miller*. It is "disingenuous" for Defendants to have argued in *Miller* that putative class members must bring their own suit, yet now to argue that Mr. Wynn's claims must only go forward in the class action lawsuit. *In re Feggins*, No. 14-1049, 2014 WL 7185376, at *3 (M.D. Ala. Dec. 16, 2014). *Compare also* ECF No. 59

---

[9] Beyond the first-filed rule, there are several other reasons that a stay would not further the interests of judicial economy. For instance, mandatory classes that bind absent class members can give rise to extensive collateral litigation. *See, e.g.*, *Juris v. Inamed Corp.*, 685 F.3d 1294, 1312–16 (11th Cir. 2012).

9

at 11 (arguing that relief must affect entire class at once), *with* ECF No. 22 at 40 (arguing that any injunction should be limited to Mr. Wynn).

***Third***, a decision denying Defendants' motion would allow important legal questions to percolate through the federal courts—an interest that Defendants touted in their previous filing in this Court. ECF No. 22 at 40. They were right to do so. There is no reason "to thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *Mendoza*, 464 U.S. at 160.[10]

***Fourth***, the significant resources that the parties have spent in this case, including expedited and expanded briefing on the Motion for Preliminary Injunction, presented this Court with an extensive record on which it based its thorough 49-page decision. Those efforts are hardly a "sunk cost," but instead allow the parties to proceed to final judgment more swiftly than any other challenge to Section 1005. As this Court observed, a prompt judgment is necessary to provide clarity to indebted farmers and ranchers across the country. ECF No. 43 at 2. There is no reason to stay the case now.

## CONCLUSION

Defendants' Motion to Stay Proceedings should be denied.

---

[10] Defendants are also incorrect when they suggest that Mr. Wynn opposed percolation in arguing for a nationwide injunction. It was only *Defendants* who predicted that a nationwide injunction issued by this Court would prevent the issue from percolating in other courts—a prediction that proved to be incorrect. *See Miller*, ECF No. 60 at 21 (independently granting preliminary injunction); *Holman*, ECF No. 41 at 21 (same).

DATED: September 7, 2021.

Respectfully submitted,

                      PACIFIC LEGAL FOUNDATION

                      s/ Wencong Fa

| CHRISTINA M. MARTIN | WENCONG FA* |
| --- | --- |
| Fla. Bar No. 100760 | Cal. Bar No. 301679 |
| 4440 PGA Blvd., Suite 307 | Lead Counsel |
| Palm Beach Gardens, FL 33410 | DANIEL M. ORTNER* |
| Telephone: (561) 691-5000 | Cal. Bar No. 329866 |
| Facsimile: (916) 419-7747 | 930 G Street |
| Email: CMartin@pacificlegal.org | Sacramento, CA 95814 |
| | Telephone: (916) 419-7111 |
| | Facsimile: (916) 419-7747 |
| | Email: WFa@pacificlegal.org |
| | Email: DOrtner@pacificlegal.org |

                      GLENN E. ROPER*
                      Colo. Bar No. 38723
                      1745 Shea Center Dr., Suite 400
                      Highlands Ranch, CO 80129
                      Telephone: (916) 419-7111
                      Facsimile: (916) 419-7747
                      Email: GERoper@pacificlegal.org

*Attorneys for Plaintiff*
*Special admission

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2021, I submitted the foregoing to the Clerk of the Court via the District Court's CM/ECF system, which will provide notice of the submission of this document to all counsel of record.

 s/ Wencong Fa  
WENCONG FA*  
Cal. Bar No. 301679  
Lead Counsel  
* Special Admission
