IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| SCOTT WYNN, an individual, | Civil Action |
| | No. 3:21-cv-00514-MMH-LLL |
| Plaintiff, | |
| v. | |
| TOM VILSACK, in his official capacity as U.S. Secretary of Agriculture; ZACH DUCHENEAUX, in his official capacity as Administrator, Farm Service Agency, | |
| Defendants. | |

### [TIME-SENSITIVE] MOTION TO COMPEL DISCOVERY RESPONSES/DOCUMENT PRODUCTION AND REQUEST FOR EXPEDITED BRIEFING

Plaintiff Scott Wynn respectfully moves this Court to compel Defendants to produce requested documents on or before December 1, 2021, and to provide complete responses to certain discovery requests.[1] An order compelling Defendants to produce the requested documents and to fully respond to Plaintiff's requests is necessary to allow Plaintiff to complete discovery prior to its close on December 3.[2] Plaintiff had hoped to resolve this issue without Court intervention, but it has recently become apparent that Defendants do

---

[1] The relief sought in this motion is limited to Plaintiff's first sets of discovery requests, which were served on August 11, 2021.
[2] Defendants have filed a motion to extend the close of discovery by another month, *see* ECF No. 76, but Plaintiff opposes any extension of the discovery deadline.

1

not intend to complete their production of the requested documents before the discovery cut-off.

Given the urgent nature of this request, Plaintiff respectfully asks that Defendants be required to respond to this Motion on an expedited basis, rather than the usual 14 days. *See* M.D. Fla. L.R. 3.01(c). Plaintiff suggests that five days would be an appropriate timeline for a response from Defendants that would enable this Court to issue a timely decision.

## FACTUAL BACKGROUND

Plaintiff served his first sets of interrogatories, document requests, and requests for admission on August 11, 2021.[3] Defendants responded on September 10. They also produced approximately 4,500 pages of documents, consisting almost entirely of reports that Defendants had already cited in their Opposition to Plaintiff's Preliminary Injunction Motion, ECF No. 22. Defendants promised to produce additional documents "on a rolling basis." Yet other than another 50 pages of documents (produced October 8) and two Excel spreadsheets (produced November 15), Defendants have produced nothing—even though Plaintiff's requests were served more than three months ago and even though Defendants' responses repeatedly state that they "will produce" responsive documents.

---

[3] In accordance with this District's Discovery Handbook, Plaintiff has not attached discovery materials or correspondence between the parties' counsel but will provide those if directed by this Court. *See* Middle Dist. Discovery Handbook at 3.

Plaintiff has attempted to resolve the discovery disputes noted below with Defendants. On September 20, he sent a letter identifying deficiencies and asking Defendants to "identify the volume of additional documents that will be produced . . . and the date by which Defendants will complete production of *all* responsive documents."[4] On September 22, the parties conferred via telephone regarding the deficiencies. On October 1, Defendants responded with supplemental objections and responses—but no additional documents. They stated that they "are unable at this time to specify precisely when the last of those documents will be produced, except to say that Defendants intend to complete production in accordance with the Court's scheduling order."

On November 3, Plaintiff sent another letter identifying unresolved deficiencies and asking for complete responses and production of documents by November 12. On November 12, the parties conferred again by phone. Defendants would not commit to producing documents prior to the close of discovery and were unable to specify the number of documents to be produced or when they would be produced. On November 15, Defendants sent a letter declining to supplement their discovery responses, despite Plaintiff's identification of deficiencies in those responses. As to documents, they did not

---

[4] *See also* Middle Dist. Discovery Handbook at 15 (directing that a response to a document request "should state a specific date when the responsive documents will be available").

3

say when all remaining documents would be produced, instead saying they "will produce" documents "as necessary to comply with the federal rules" and as to one of Plaintiff's requests, that they "anticipate" that they will produce responsive documents "circa November 24."

In sum, despite Plaintiff's numerous good-faith attempts to confer, correct, and clarify with Defendants, Defendants remain unwilling to fully respond to discovery requests and to produce the requested documents in a timely manner.

## STANDARD OF DECISION

A party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court has broad discretion in defining the scope of discovery, *Williams v. City of Dothan, Ala.*, 745 F.2d 1406, 1415 (11th Cir. 1984), including broad discretion to compel discovery, *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).

Under Rule 37, any party seeking discovery may move for an order compelling an answer or production if the responding party has failed to provide a complete discovery response. Fed. R. Civ. P. 37(a)(3)(B), (a)(4). Under Rule 36, a party requesting an admission may move to determine the sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6).

4

## DISCOVERY AT ISSUE

### I.   Defendants' Failure to Produce Documents

Plaintiff seeks a firm cutoff date—prior to the close of discovery on December 3—for Defendants to complete their document production. A cutoff date is necessary to allow Plaintiff to properly prepare for dispositive motions in this expedited case. Moreover, Plaintiff needs to receive the requested documents with enough time to review and determine whether documents are being improperly withheld, as motions to compel "must be filed <u>no later than</u> the close of discovery." Case Mgmt. & Scheduling Order, ECF No. 43, at 2 (emphasis in original). If—as Defendants apparently intend—their production does not occur prior to the close of discovery, then Plaintiff will be foreclosed from seeking that additional relief, if needed.

Defendants have not satisfactorily explained their delay in producing documents that were requested more than three months ago. They cannot claim surprise at a compressed discovery schedule; as the Court emphasized when setting the schedule, it "will require the parties to work diligently to prepare this case for final adjudication" and the parties should not "assume that the court will extend these deadlines." *Id.* at 2, 4 (capitalization altered). Yet Defendants' motion to extend discovery deadlines [ECF No. 76] indicates that they have identified more than 15,000 potentially responsive documents that they apparently have not even reviewed, let alone produced. And although

5

they earlier promised to produce responsive documents "on a rolling basis," they have produced a mere 50 pages in the last two months. Plaintiff's document requests were proper and Defendants have agreed to produce responsive documents; they should not be rewarded for an apparent lack of diligence by being allowed to draw out that production until it is too late for Plaintiff to effectively review and use the documents.

Plaintiff thus asks this Court to order that Defendants produce all responsive documents on or before December 1, 2021. Alternatively, if the Court is inclined to credit Defendants' bare assertion that "technical and personnel limitations" affect their ability to complete their review and production of documents, *see* ECF No. 76, at 2, the Court should compel them to make as complete a production as possible by December 1 and to use all diligence to produce the remaining documents before the close of discovery. To ensure the parties' compliance with the expedited schedule in this case, Plaintiff respectfully suggests that it would be beneficial for the Court to schedule a conference with the parties and set a firm date for Defendants to complete their production.

## II. Deficient Interrogatory Responses

Plaintiff also moves for an order under Rule 37 compelling Defendants to fully answer the following interrogatories. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii).

### A. Interrogatory 8

Interrogatory 8 asks about Defendants' process for determining whether a group is socially disadvantaged for purposes of Section 1005:

> Interrogatory No. 8: Please describe the process for determining whether a group is "socially disadvantaged" for purposes of Section 1005, including how Defendants determined that each group identified in the *Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA)*, 86 Fed. Reg. 28,329 (May 26, 2021) (namely, "American Indians or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or Latinos") is "socially disadvantaged."

Defendants have not provided a complete response regarding how the Secretary treats or will treat requests to recognize additional racial groups—those not listed in the *Notice of Funds Availability* ("NOFA")—as "socially disadvantaged." On this point, their interrogatory response simply quoted from the NOFA, without providing any explanation of the process:

> As to the current (post-NOFA) process, the Secretary of Agriculture "will determine on a case-by-case basis whether additional groups qualify under this definition in response to a written request with supporting explanation." *See* [NOFA].

Plaintiff followed up to request a more complete explanation of this "case-by-case" determination, including specifically asking whether there are any "policies, procedures, or plans (formal or informal) concerning how the Secretary would make a 'case-by-case' determination as to whether additional racial or ethnic groups qualify as 'socially disadvantaged.'" Yet Defendants

7

steadfastly refused to answer, saying that they "do not intend to supplement further their response[]" to Interrogatory 8.

Plaintiff is entitled to know how the Secretary evaluates or intends to evaluate requests for inclusion as a "socially disadvantaged" group under Section 1005, including the substance of any policies, procedures, or plans—formal or informal, written or unwritten—that relate to that evaluation. This request is relevant to Plaintiff's claim that Section 1005's broad racial classifications are not narrowly tailored to further a compelling governmental interest, Complaint, ECF No. 1, ¶ 56, as well as to Defendants' affirmative defense of failure to exhaust administrative remedies. *See* Answer, ECF No. 48, at 13; *see also* Defs.' Resp. to Interrog. 15 (in response to Plaintiff's query as to the basis for Defendants' failure to exhaust defense, stating that "[u]pon information and belief, Plaintiff has not submitted a written request [for determination of social disadvantage] to the Secretary").[5] Accordingly, Plaintiff requests an order compelling a complete response to Interrogatory 8.

### B. Interrogatory 12

Interrogatory 12 asks about specific instances of discrimination by USDA or FSA on the basis of race over the last 25 years:

> Interrogatory No. 12: Please identify all instances in the past 25 years in which USDA or FSA engaged in or facilitated

---

[5] Defendants' deficient response to Interrogatory 15 is discussed more fully below.

discrimination on the basis of race (including both race and ethnicity).

Defendants failed to provide a complete response, instead referring to the documents cited in their Response in Opposition to Plaintiff's Motion for Preliminary Injunction [ECF No. 22]. They claimed that no additional, specific response is required because the government need not show actual discrimination, but need only establish "a strong basis in evidence for its conclusion that [the challenged] action was necessary to further its compelling interests." Defs.' Resp. to Interrog. 12 (quotation marks omitted).

Plaintiff followed up to explain his position that "whether actual discrimination occurred is absolutely relevant to whether Section 1005 is supported by a compelling interest." (emphasis omitted). Plaintiff therefore again asked Defendants to identify "any instances of discrimination on the basis of race by USDA or FSA beyond those identified in the documents listed in Defendants' supplemental response to Interrogatory No. 12." Yet Defendants refused to either identify specific instances of discrimination or state that they are unaware of any, instead saying only that they "do not intend to supplement further their response[]" to Interrogatory 12.

Plaintiff is entitled to know of any specific instances of discrimination by USDA or FSA on the basis of race of which Defendants are aware, since alleged racial discrimination by USDA is the very foundation of the government's

9

alleged compelling interest. *See* ECF No. 22, at 1 (asserting that Section 1005 is intended to provide debt relief to certain groups "due to decades of discrimination against them in U.S. Department of Agriculture (USDA) programs"). Defendants cannot avoid providing information of specific instances of discrimination—or admitting that there are no such instances of which they are aware. Accordingly, Plaintiff requests an order compelling a complete response to Interrogatory 12.

### C. Interrogatory 15

Interrogatory 15 asks about the basis for Defendants' assertion that Plaintiff has failed to exhaust administrative remedies:

> Interrogatory No. 15: Please state the complete basis for your contention that "Plaintiff has failed to exhaust administrative remedies." ECF No. 48 at 13.

Defendants responded by quoting NOFA's statement that the Secretary of Agriculture will "determine on a case-by-case basis whether additional groups qualify [as socially disadvantaged] in response to a written request for supporting explanation" and asserting that "[u]pon information and belief, Plaintiff has not submitted a written request to the Secretary."

Plaintiff followed up to explain that this response "does not clearly specify whether Defendants believe that such a request to the Secretary is a necessary step" and asked Defendants to "clarify whether Defendants believe that Plaintiff is required to submit a request to the Secretary for designation

10

of his racial or ethnic group as socially disadvantaged in order to exhaust available administrative remedies." Defendants refused, saying only that they "do not intend to supplement further their response[]" to Interrogatory 15.

Plaintiff is entitled to know whether Defendants consider a request to the Secretary for recognition as socially disadvantaged to be a necessary step in exhausting administrative remedies. Without understanding the basis for Defendants' affirmative defense, Plaintiff is unable to properly respond. Accordingly, Plaintiff requests an order compelling a complete response to Interrogatory 15.

### III. Deficient Responses to Requests for Admission 20 and 21

Plaintiff moves for a determination under Rule 36 that Defendants' answers to Requests for Admission 20 and 21 are insufficient and an order that they be amended. *See* Fed. R. Civ. P. 36(a)(6).

These two Requests are complementary, as they ask Defendants to admit that USDA either *does* or *does not* recognize racial or ethnic groups beyond those listed in USDA Form AD-2047:[6]

> Request for Admission No. 20: Admit that USDA does not currently recognize any additional racial or ethnic groups beyond the ones listed in its Form AD-2047.

---

[6] Form AD-2047 is available at https://www.fsa.usda.gov/Internet/FSA_File/ad2047.pdf.

11

> Request for Admission No. 21: Admit that USDA currently recognizes additional racial or ethnic groups beyond the ones listed in its Form AD-2047.

Defendants improperly limited their responses to only address whether USDA recognizes other racial or ethnic groups *for purposes of Section 1005*, even though the requests plainly ask a much broader question. Defendants objected that "it is irrelevant whether USDA currently recognizes additional racial or ethnic groups" for other purposes because "Plaintiff challenges only USDA's implementation of Section 1005." However, as Plaintiff explained in following up on the response, the requests are relevant to the Secretary's supposed ability under the NOFA to determine whether other races or ethnicities are "socially disadvantaged." Specifically,

> whether USDA currently recognizes any races or ethnicities beyond the ones listed in AD-2047 for any governmental purpose is relevant, including as to whether designation by the Secretary of additional races or ethnicities as "socially disadvantaged" is a realistic possibility or whether a request for such a designation would be futile."

Yet Defendants have refused to admit or deny that broader question, incorrectly arguing that Plaintiff "fail[ed] to explain how discovery related to other USDA programs is relevant to your challenge to the implementation of Section 1005."

These requests are relevant both to Plaintiff's equal protection claims and to Defendants' asserted defense of failure to exhaust administrative

12

remedies. Defendants cannot, on one hand, argue that Plaintiff failed to exhaust administrative remedies while, on the other hand, refusing to allow Plaintiff to probe that defense. Plaintiff therefore requests that the Court order amended answers to Requests for Admission 20 and 21.

## CONCLUSION

For these reasons, Plaintiff asks the Court to order that production of documents responsive to Plaintiff's first set of discovery requests be completed by December 1, 2021, and to compel complete responses to the foregoing discovery requests.[7]

DATED: November 19, 2021.

---

[7] Pursuant to Federal Rule of Civil Procedure 37(a)(5), this Court should award Plaintiff "reasonable expenses incurred in making the motion."

Respectfully submitted,

PACIFIC LEGAL FOUNDATION

|  |  |
|---|---|
| Christina M. Martin<br>Fla. Bar No. 100760<br>4440 PGA Blvd., Suite 307<br>Palm Beach Gardens, FL 33410<br>Telephone: (561) 691-5000<br>Facsimile: (916) 419-7747<br>Email: CMartin@pacificlegal.org | s/ Wencong Fa<br>Wencong Fa*<br>Cal. Bar No. 301679<br>Lead Counsel<br>Daniel M. Ortner*<br>Cal. Bar No. 329866<br>555 Capitol Mall, Suite 1290<br>Sacramento CA 95814<br>Telephone: (916) 419-7111<br>Facsimile: (916) 419-7747<br>Email: WFa@pacificlegal.org<br>Email: DOrtner@pacificlegal.org<br><br>Glenn E. Roper*<br>Colo. Bar No. 38723<br>1745 Shea Center Dr., Suite 400<br>Highlands Ranch CO 80129<br>Telephone: (916) 419-7111<br>Facsimile: (916) 419-7747<br>Email: GERoper@pacificlegal.org |

*Attorneys for Plaintiff*
*Special admission

## LOCAL RULE 3.01(g) CERTIFICATION

The parties conferred by telephonic conference on November 12, 2021.

Defendants oppose the relief sought in this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2021, I submitted the foregoing to the Clerk of the Court via the District Court's CM/ECF system, which will provide notice of the submission of this document to all counsel of record.

 s/ Wencong Fa
Wencong Fa*
Cal. Bar No. 301679
Lead Counsel
* Special Admission