IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| SCOTT WYNN, an individual, | Civil Action |
| Plaintiff, | No.  3:21-cv-00514-MMH-LLL |
| v. | |
| TOM VILSACK, in his official capacity as U.S. Secretary of Agriculture; ZACH DUCHENEAUX, in his official capacity as Administrator, Farm Service Agency, | |
| Defendants. | |

**PLAINTIFF'S MOTION FOR ATTORNEY FEES**
**[28 U.S.C. § 2412]**

Plaintiff Scott Wynn respectfully moves for an award of attorney fees incurred in challenging Section 1005(a)(2) of the American Rescue Plan Act of 2021. He seeks attorney fees and expenses pursuant to 28 U.S.C. § 2412 (Equal Access to Justice Act or EAJA), Fed. R. Civ. P. 54(d)(2), and Local Rule 7.01. Mr. Wynn is the prevailing party under the EAJA because he obtained the first preliminary injunction that enjoined the race-based debt relief program nationwide. ECF No. 41. Mr. Wynn is entitled to fees and expenses in the amount of $127,709.05.[1]

---

[1] This fee motion is timely. On September 13, 2022, the Court dismissed this action without prejudice

## INTRODUCTION AND BACKGROUND

Mr. Wynn brought this case to challenge Section 1005's grant of debt relief to "socially disadvantaged" farmers or ranchers, which Defendants interpreted to exclude all white or Caucasian farmers and to include all those identifying as Black/African American, American Indian, Alaskan native, Hispanic/Latino, Asian American, or Pacific Islander. *See* Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA), 86 Fed. Reg. 28,329 (published May 26, 2021). Mr. Wynn, a white farmer in Jennings, Florida, sued under both the equal protection component of the Fifth Amendment's Due Process Clause and the Administrative Procedure Act, seeking an injunction against this racially discriminatory program. Compl., ECF No. 1. He also sought a preliminary injunction to prevent funds from being distributed before the case could be resolved on the merits. Pl.'s Mot. Prelim. Inj., ECF No. 11 at 4.

The Court granted Mr. Wynn's motion for a preliminary injunction on June 23, 2021 (ECF No. 41), and enjoined Defendants from issuing any payments, loan assistance, or debt relief pursuant to Section 1005 until further order from the Court. This nationwide injunction prevented the government from violating Mr. Wynn's constitutional rights and from distributing debt relief on the basis of race. *Id.* at 47–48; *see* Compl., ECF No. 1, at 20–21. Although other courts subsequently granted

---

(ECF No. 91) after the parties filed a Joint Stipulation of Dismissal on September 12, 2022 (ECF No. 90). This motion is submitted on October 12, 2022, in accordance with the Court's order granting Mr. Wynn's request to clarify or extend the deadline to file this motion (ECF No. 95). *See* 28 U.S.C. § 2412(d)(1)(B); *Singleton v. Apfel*, 231 F.3d 853, 855 n.4 (11th Cir. 2000).

preliminary injunctions that also prevented the government from implementing Section 1005, this Court was the first to do so.[2]

With the preliminary injunction in place, the parties continued to litigate the case and conducted discovery for about six months. The Court then issued an order staying the case on December 7, 2021, in light of a pending class-action lawsuit in Texas that also challenged the race-based provisions of Section 1005. ECF No. 84. Nonetheless, this Court's injunction continued to prohibit Defendants from distributing funds under Section 1005.

On August 16, 2022, through Section 22008 of the Inflation Reduction Act of 2022, Congress repealed Section 1005 in its entirety. Because of the preliminary injunctions to which Defendants were subject, the funds allocated under Section 1005 were never distributed on the basis of race. Given the repeal of Section 1005, the parties stipulated to a dismissal of the case on September 12, 2022. ECF No. 90.

Mr. Wynn is entitled to attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). He meets all the EAJA requirements: success on his preliminary injunction motion makes him the prevailing party; the government's litigation position was not substantially justified; no special circumstances make an award unjust; and Mr. Wynn's net worth did not exceed $2 million when the action was filed (*See* Ex. A, Wynn Decl. ¶ 3). Further, the amount of fees and costs requested are reasonable. Mr. Wynn therefore requests that this Court award attorney fees and

---

[2] A court in Wisconsin issued a temporary restraining order before this Court's decision. *See Faust v. Vilsack*, 519 F.Supp.3d 470 (E.D. Wis. 2021).

expenses in the amount of $100,805.42 in attorney fees and $26,903.63 in costs, totaling $127,709.05.

Mr. Wynn's counsel conferred by phone and by email with counsel for the Defendants on October 7, 2022. The parties were unable to come to a resolution. Defendants oppose the relief sought in this motion.

## STANDARD OF DECISION

The EAJA "eliminate[s] for the average person the financial disincentive to challenge unreasonable governmental actions." *Comm'r, INS v. Jean*, 496 U.S. 154, 163 (1990). Under Section 2412(d) of the EAJA, the Court "shall award to a prevailing party . . . fees and other expenses . . . in any civil action . . . brought by or against the United States in any court having jurisdiction of such action." 28 U.S.C. § 2412(d)(1)(A). An EAJA motion for attorney fees and expenses must be filed within 30 days of entry of final judgment in the action and must be supported by an itemized statement of the actual time expended and the rate at which fees and other expenses were computed. *Id.* § 2412(d)(1)(B), (d)(2)(G).

Under Section 2412(d), fees and costs must be awarded when (1) the moving party is the prevailing party,[3] (2) the government is unable to establish that its position as a whole has been substantially justified, (3) there are not special circumstances

---

[3] A prevailing party may assign her fee award to be paid directly to her counsel. *Astrue v. Ratliff*, 560 U.S. 586, 596–98 (2010); *McCullough v. Astrue*, 565 F.Supp.2d 1327, 1330 (M.D. Fla. 2008). However, the assignment must comply with the requirements of 31 U.S.C. § 3727(b) (the "Anti-Assignment Act") by being made "after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b); *Salva v. Comm'r of Soc. Sec.*, No. 6:20-cv-1862-GJK, 2022 WL 2674048, at *1 (M.D. Fla. Mar. 23, 2022).

sufficient to make such an award unjust, and, (4) if the moving party is an individual, the party's net worth did not exceed $2,000,000 at the time the action was filed. 28 U.S.C. § 2412(d)(1)(A), (d)(2)(D), (d)(3), (d)(2)(B). The court determines whether the fees requested are reasonable, and attorney fees may not exceed $125 an hour except under certain conditions. *See* 28 U.S.C. § 2412(d)(2)(A); *Jean*, 496 U.S. at 160.

A court's decision to grant a request for attorney fees under federal fee-shifting statutes is reviewed for abuse of discretion, "with subsidiary factual findings reviewed for clear error and conclusions of law reviewed *de novo*." *Common Cause Ga. v. Georgia*, 17 F.4th 102, 107 (11th Cir. 2021) (citing *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009)).

## ARGUMENT

## I.  MR. WYNN IS ENTITLED TO FEES AND EXPENSES UNDER THE EAJA

Mr. Wynn's motion for attorney fees satisfies all elements of the EAJA. He is the prevailing party in this action because he successfully vindicated his constitutional rights by obtaining a preliminary injunction on the merits; the pre-litigation and litigation positions of the government in implementing and defending Section 1005 were not substantially justified; there are no special circumstances that would make an award unjust; and Mr. Wynn meets the applicable net worth requirements. *See* Ex. A, Wynn Decl. ¶ 3. The EAJA's presumptive limit of $125 should also be increased based

on an increase in the cost of living.[4]

### A.   Mr. Wynn Is the Prevailing Party

Mr. Wynn is the prevailing party for purposes of the EAJA because he has achieved some "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 75 (2007) (cleaned up) (quoting *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)). For there to be a material alteration, there must be "either (1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties." *Billups*, 554 F.3d at 1356 (cleaned up) (quoting *Smalbein ex rel. Est. of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003) (per curiam)). This can mean "success on any significant claim affording the litigant some of the relief sought, either *pendente lite* or at the conclusion of the litigation." *Common Cause Ga.*, 17 F.4th at 107 (cleaned up) (quoting *Garland*, 489 U.S. at 791).

In this Circuit, "a preliminary injunction on the merits entitles one to prevailing party status and an award of attorney's fees." *Common Cause Ga.*, 17 F.4th at 107 (cleaned up) (quoting *Billups*, 554 F.3d at 1356).[5] A defendant's voluntary change in the relevant conduct, when taken *after* the issuance of a preliminary injunction, does

---

[4] Mr. Wynn timely filed this motion within 30 days after entry of final judgment in this action. *See* 28 U.S.C. § 2412(d)(1)(B). Also included in this brief is an itemized statement of the actual time expended and qualifying costs. *Id.*

[5] The Eleventh Circuit has also granted prevailing party status to a party that obtained a temporary restraining order. *See Common Cause Ga.*, 17 F.4th at 107–08 (affirming district court's award of attorney fees under 42 U.S.C. § 1988).

not negate prevailing party status. *See Billups*, 554 F.3d at 1356 (holding a judicial victory based on a preliminary injunction preventing the implementation of a statute was not invalidated when the original statute was repealed and replaced).[6]

Although the aforementioned cases concern other federal fee-shifting statutes, these standards are equally applicable to the EAJA. *See Morillo-Cedron v. Dist. Dir. for the U.S. Citizenship & Immigration Servs.*, 452 F.3d 1254, 1258 (11th Cir. 2006) ("[W]e conclude that there is no basis for distinguishing the term 'prevailing party' in the EAJA from other fee-shifting statutes."). In this district, courts have found prevailing party status and granted attorney fees under the EAJA and 42 U.S.C. § 1988 when the party requesting attorney fees obtained a preliminary injunction and the defendant took voluntary action to moot the controversy. *See, e.g., Joyce v. Potter*, No. 5:06-cv-339-Oc-10GRJ, 2007 WL 2050955, at *5 (M.D. Fla. July 16, 2007) (unpublished decision), *amended on other grounds*, 2008 WL 11434570 (Apr. 7, 2008) (decided under the EAJA); *ACLU of Fla., Inc. (Greater Tampa Chapter) v. Polk Cnty., Fla.*, No. 8:05-CV-02266, 2006 WL 2147716, at *3 (M.D. Fla. July 28, 2006) (unpublished decision) (decided under 42 U.S.C. § 1988).

Because Mr. Wynn was granted a preliminary injunction, which included a finding that he was likely to prevail on the merits, Mr. Wynn is entitled to prevailing party status. *See Common Cause Ga.*, 17 F.4th at 107. The decision in *Billups*, where the

---

[6] Other circuits follow this same rule. *See, e.g., Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 911 (8th Cir. 2012); *Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 949–50 (D.C. Cir. 2005); *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1095–96 (9th Cir. 2002).

National Association for the Advancement of Colored People (NAACP), Inc. and voters were recognized as prevailing parties based on obtaining an injunction that was effective until the law at issue was repealed, is instructive. 554 F.3d at 1356. There, the preliminary injunction "materially altered their legal relationship with the election officials" by "prevent[ing] Georgia from enforcing the requirement of photo identification for in-person voting." *Id.* Because the preliminary injunction materially altered the relevant legal relationship, the court held that the NAACP and voters were prevailing parties. *Id.*

Similarly, the Court in this case, in the preliminary injunction order, engaged in a thorough review of the merits and determined that Mr. Wynn had "shown a substantial likelihood of success on his claim that, as written, the law violates his right to equal protection." ECF No. 41 at 17. The Court issued a preliminary injunction that barred the issuance of payments pursuant to Section 1005 and prevented a likely violation of Mr. Wynn's constitutional rights. By doing so, the Court materially altered the legal relationship between Mr. Wynn and Defendants. As in *Billups*, this is sufficient to make Mr. Wynn the prevailing party.

### B. The Government's Position Was Not Substantially Justified

The government can block an EAJA award of attorney fees and expenses if it can show that its position as a whole was substantially justified. 28 U.S.C. § 2412(d)(1)(A), (d)(1)(B); *see Scarborough v. Principi*, 541 U.S. 401, 414 (2004). The position of the United States includes both the position taken prior to the litigation and during the litigation, with the former relating "to the action or failure to act by the

agency upon which the civil action is based." *Id.* § 2412(d)(1)(A), (d)(1)(B); *Myers v. Sullivan*, 916 F.2d 659, 666 n.5 (11th Cir. 1990).

To be substantially justified, the government's positions must have been "justified to a degree that could satisfy a reasonable person" and must have a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In making this determination, courts may consider (as guideposts while also considering other factors): (1) the state at which the litigation was resolved; (2) views expressed by other courts on the merits; (3) the legal merits of the government's position; (4) the clarity of the governing law; (5) the foreseeable length and complexity of the litigation; and (6) the consistency of the government's position. *Jean v. Nelson*, 863 F.2d 759, 767–68 (11th Cir. 1988). Factors one through four are applicable and go against the defendants. Additionally, the government's position did not have a reasonable evidentiary basis.

Defendants will be unable to show that either the pre-litigation or litigation positions of the government was substantially justified.

### 1.    The Government's Pre-Litigation Position

The government's pre-litigation position, as demonstrated in its implementation of Section 1005, was not substantially justified. The Administrative Procedure Act forbids agencies from taking action that is contrary to a constitutional right. *See* 5 U.S.C. § 706. Yet, by implementing Section 1005, the USDA plainly violated the equal protection component of the Fifth Amendment's Due Process Clause.

As this Court explained in its order granting Mr. Wynn's Motion for Preliminary Injunction, the government was unable to provide sufficient evidence to establish that Section 1005 served a compelling interest. *See* ECF No. 41 at 7–17. Specifically, the Court stated that "the actual evidentiary support for the inadequacy of past remedial measures is limited and largely conclusory" and the "evidence presented appears less substantial than that deemed insufficient in" *Eng'g Contractors Ass'n of S. Fla. v. Metro. Dade Cnty.*, 122 F.3d 895, 906–07 (11th Cir. 1997). ECF No. 41 at 12, 16, 16 n.9. [7] Further, as Mr. Wynn's Motion for Preliminary Injunction discusses, Congress did not include findings to explain its purpose in enacting the race-based loan assistance provisions in Section 1005. Pl.'s Mot. Prelim. Inj., ECF No. 11 at 4. The government's supporting evidence was severely lacking prior to the litigation and up to the Court's issuance of a preliminary injunction.

Especially lacking evidentiary support was the inclusion of Asian Americans and Hawaiians or Pacific Islanders in the meaning of the term "socially disadvantaged group." *See* 86 Fed. Reg. 28,329. As the Court noted in its preliminary injunction order in its discussion of narrow tailoring, "evidence of prior discrimination [against Asians, Native Hawaiians, and Pacific Islanders] by the USDA in farm loans, programs and services appears to be exceedingly thin." ECF No. 41 at 25. Given the evidence, the

---

[7] Though the Court stated, "at this stage of the proceedings, the Court need not determine whether the government ultimately will be able to establish a compelling need for" Section 1005, the Court expressed "serious concerns over whether the government will be able to establish a strong basis in evidence warranting the implementation of Section 1005's race-based remedial action." ECF No. 41 at 15, 16. Thus, while the Court did not definitively decide whether the government was likely to ultimately be able to provide sufficient evidence to show a compelling need for Section 1005, it is unmistakable that such evidence was lacking up to that stage of the litigation.

USDA's wholesale inclusion of every group from its prior interpretation into its implementation of Section 1005 was unjustifiable.

This Court observed numerous other ways in which Section 1005 was not narrowly tailored. *See* ECF No. 41 at 18–32 (noting that "little if anything about Section 1005 suggests that it is narrowly tailored"). For instance, Section 1005 was (1) inflexible in that it applied strictly on racial grounds; (2) rigid in the relief it awards with no exceptions to allow non-SDFRs to qualify; (3) "untethered to an attempt to remedy any specific instance of past discrimination"; (4) based on little evidentiary support for the magnitude of relief; (5) not targeted toward helping those who suffered the brunt of discrimination; and (6) implemented without meaningful consideration of race-neutral alternatives. *Id.* at 18–32. All told, the governing law is clear and the merits weigh heavily against the defendants. The government's pre-litigation position did not have a reasonable basis in law and fact. *See Pierce*, 487 U.S. at 565.

### 2.    The Government's Litigation Position

The government's litigation position consisted of vigorously defending a law that was plainly unable to withstand strict scrutiny. The evidentiary and narrow tailoring discussions in the section of this brief concerning the government's pre-litigation positions also apply to the government's litigation positions. *See supra* section I.B.1. Like its pre-litigation position, the government's litigation positions defending Section 1005 did not have the requisite basis in law and fact to be justifiable. Most significantly, the government was not substantially justified in arguing that Section 1005 was narrowly tailored. *See supra* section I.B.1.

Relevant case law and the views of other courts also weigh in favor of finding that the government's positions were not substantially justified.[8] Every one of the four courts that have reviewed the merits of Section 1005 has concluded that it likely violates the right to equal protection. *See* ECF No. 41; *Holman v. Vilsack*, No. 21-1085-STA-jay, 2021 WL 2877915 (W.D. Tenn. July 8, 2021) (granting motion for preliminary injunction); *Miller v. Vilsack*, No. 4:21-cv-00595-O, ECF No. 60 (N.D. Tex. July 1, 2021) (granting motion for preliminary injunction and motion for class certification); *see also Faust v. Vilsack*, 519 F.Supp.3d 470 (E.D. Wis. 2021) (issuing temporary restraining order). Thus, the views expressed by other courts on the merits cuts in Mr. Wynn's favor. *See Jean*, 863 F.2d at 767.

In its preliminary injunction order, this Court explained that the clarity of governing law and legal merits, which are *Jean* factors, are further on Mr. Wynn's side. *See Jean*, 863 F.2d at 767; ECF No. 41 at 19–28, 30–31. As the Court noted, Section 1005 resembles race-based schemes "found not to be narrowly tailored . . . ." ECF No. 41 at 22. The government's litigation position, like its pre-litigation position, was not substantially justified.

## C.    No Special Circumstances Make Attorney Fees Unjust

The government has the burden to prove special circumstances that would make a fee award unjust. *Martin v. Heckler*, 773 F.2d 1145, 1150 (11th Cir. 1985) (en banc),

---

[8] As previously stated, the views expressed by other courts on the merits of the legal action, the clarity of governing law, and the legal merits of the government's position are factors relevant to whether the government's position was justifiable. *Jean*, 863 F.2d at 767.

overruled on other grounds, *Tex. State Tchrs. Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782 (1989); *see also Kunz Constr. Co. v. United States*, 16 Cl. Ct. 431, 434 (1989), *aff'd*, 899 F.2d 1227 (1990). This exception is narrowly construed to avoid interfering with or defeating Congress's purpose in passing statutes such as the EAJA, which is to encourage the protection and enforcement of rights by plaintiffs acting as "private attorneys general." *Martin*, 773 F.2d at 1149–50 (internal quotation marks omitted) (citing *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 63 (1980)).

In this Circuit, the following circumstances "might constitute special circumstances": (1) the plaintiff's action asserts essentially a private tort claim for money damages; (2) the plaintiff was not instrumental in achieving the remedy; (3) the plaintiff challenged an antiquated, rarely enforced statute; and (4) the plaintiff had compromised the right to pursue subsequent fees. *Martin*, 773 F.2d at 1151 (citing *Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 544–45 (5th Cir. 1980); *see also Love v. Deal*, 5 F.3d 1406, 1410 (11th Cir. 1993).

Here, the government will be unable to show that any of these or other special circumstances apply. Mr. Wynn's claim was not a tort claim for money damages; rather, he sought only injunctive and declaratory relief. Mr. Wynn obtained a nationwide preliminary injunction of Section 1005—the first such injunction in the country. Section 1005 was a new statute and, by obtaining the injunction, Mr. Wynn halted "swift and irreversible" implementation of Section 1005. ECF No. 41 at 47–48. Mr. Wynn also has done nothing to compromise his right to pursue fees. Nor is this a case where fees should be denied because the "origin of the litigation was plaintiff's

own negligence." *See Wimpy v. Barnhart*, 350 F.Supp.2d 1031, 1034–36 (N.D. Ga. 2004).[9] Thus, there are no special circumstances that would make an award of attorney fees to Mr. Wynn unjust.

### D.    Fee Rates and Time Expended

Mr. Wynn is entitled to reasonable attorney fees and expenses amounting to $127,709.05, based on 474.11 hours at $212.61 (2021) and $228.91 (2022) per hour for $100,805.42 total in fees and $26,903.63 in expenses.

In determining whether requests for fees under the EAJA are reasonable, courts conduct a "lodestar" analysis: the number of hours reasonably expended on the matter is multiplied by a reasonable hourly rate. *Jean*, 863 F.2d at 773. Calculated in this way, the resulting fee carries a strong presumption of reasonableness. *City of Burlington v. Daque*, 505 U.S. 557, 562 (1992).

### 1. Reasonable Rate

The reasonable hourly rate is "based upon prevailing market rates for the kind and quality of services furnished," not to exceed $125 per hour unless the court determines an increase in the cost of living, or a special factor, justifies a higher fee. 28 U.S.C. § 2412(d)(2)(A). Courts use a two-step analysis to determine the appropriate hourly rate under the EAJA.

---

[9] Other circuits have examined circumstances such as close or novel questions of law, *see, e.g.*, *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 972 F.2d 669, 671 (6th Cir. 1992), or the doctrine of unclean hands, which "applies most appropriately to those cases where the party applying for relief engaged in nefarious conduct related to the matter at issue and that adversely affected the other party." *Sakhawati v. Lynch*, 839 F.3d 476, 478–79 (6th Cir. 2016). Mr. Wynn clearly does not have "unclean hands" and, has been discussed, the applicable legal questions were not close.

First, the court determines the prevailing market rate for similar services in similarly complex litigation provided by lawyers of "comparable skill, experience, and reputation" in the area (i.e., the community in which the district court sits). *Meyer v. Sullivan*, 958 F.2d 1029, 1033–34 (11th Cir. 1992); *Watford v. Heckler*, 765 F.2d 1562, 1568 (11th Cir. 1985). Second, if the market rate is greater than $125 per hour, the court evaluates the cost of living increase at the time the work was performed "to determine whether the court should adjust the hourly fee" above the statutorily identified amount of $125 "to take into account an increase in the cost of living, or a special factor." *Meyer*, 958 F.2d at 1033–34.

Here, the prevailing market rate exceeds $125 per hour, and the hourly rate should be adjusted to account for the cost of living increase. The prevailing market rate for similar services provided by lawyers of comparable skill, experience, and reputation in this area and charged for similarly complex litigation ranges from, conservatively, $250 to $500 per hour. It has been observed in this district that "counsel submitting EAJA fee petitions for services performed during and after 2020 have typically sought hourly rates exceeding $200. Accordingly, the hourly rate charged by competent attorneys in this market has, for some time, surpassed the statutory cap of $125." *Frazier v. Kijakazi*, No. 8:20-cv-1736-CPT, 2022 WL 3028042, at *2 (M.D. Fla. Aug. 1, 2022). The *Frazier* court cited several examples of courts in this district noting this reality, and therefore found "it appropriate to deviate upwardly from the EAJA's base fee rate to account for increases in the cost of living." *Id.* The reasoning in *Frazier* applies with equal force here.

Additionally, in determining the prevailing market rate, courts look at market data, such as "evidence about fees actually billed and paid in similar cases or any other" relevant evidence. *See Mraz v. I.C. Sys., Inc.*, No. 2:18-cv-254-FtM-38NPM, 2021 WL 4086147, at *8–9 (M.D. Fla. Aug. 23, 2021).[10]

In light of the skills, experience, and reputation of the PLF attorneys that represented Mr. Wynn, the applicable market rate well exceeds $125. PLF seeks to recover fees only for the core litigation team members, rather than for every attorney, paralegal, and law clerk who contributed to this case. The attorneys making up the core litigation team are: Wencong Fa (admitted in 2013), Glenn Roper (admitted in 2007), and Daniel Ortner (admitted in 2020). As described in the accompanying declarations, each of these PLF attorneys has substantial litigation experience and a proven track record of success. *See* Fa, Roper, Ortner Decls.

For attorneys of similar skill, experience, and reputation as PLF's aforementioned attorneys, hourly rates of at least $250 to $500 per hour are common and reasonable. Experienced Jacksonville, Florida-based attorneys Adam Brandon and David Osborne each attest that hourly rates exceeding $250 to $300 per hour are in line with what they charge in cases of similar complexity. *See* Ex. B, Decl. of Adam Brandon in Support of Plaintiff's Motion for Attorney Fees ¶ 4; Ex. C, Decl. of David

---

[10] Even if the moving party provides no such data, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (*quoting Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)); *see, e.g., Heisler v. Comm'r of Soc. Sec.*, No. 2:21-cv-107-NPM, 2022 WL 2757486, at *1 (M.D. Fla. July 14, 2022).

Osborne in Support of Plaintiff's Motion for Attorney Fees ¶ 3; *see Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d at 1299 ("Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence."). Mr. Brandon opines that, based on the applicable rate in Jacksonville, Florida, in a case of this complexity, a reasonable hourly rate for Daniel Ortner is $250 to $300 or above per hour and a reasonable hourly rate for Wencong Fa and Glenn Roper is $350 to $500 or above per hour. Ex. B, Brandon Decl. ¶ 6. On the same issue, Mr. Osborne opines that a reasonable hourly rate for Daniel Ortner would be at or above $250 per hour and a reasonable hourly rate for Wencong Fa and Glenn Roper would exceed $300 per hour. Ex. C, Osborne Decl. ¶ 7.

Since the prevailing market rate well exceeds $125, it is necessary to adjust the hourly fee based on CPI data on the increase in the cost of living. *See Meyer*, 958 F.2d at 1033–34. Mr. Wynn's attorneys performed work in 2021 and 2022. *See* Ex. D, Itemized Statement of Attorney Hours. The Department of Labor's Consumer Price Index ("CPI") is used to calculate cost of living adjustments. *See, e.g.*, *O'Neill v. Comm'r of Soc. Sec.*, No: 6:21-cv-1072-EJK, 2022 WL 2916816 at *2 (M.D. Fla. July 9, 2022). The calculation of the increase in the cost of living uses 1996, when the statutory rate was established, as a starting point and measures the increase to when the counsel performed their work on the case (here, 2021 and 2022). *See O'Neill*, 2022 WL 2916816 at *3. Using 1996 as a starting point, the average CPI increase for all urban consumers

in the Southern region was 261.259 in 2021 and 281.289 in 2022.[11] Based on the standard formula used for this calculation, this brings the hourly rates to $212.61 (2021) and $228.91 (2022). *See O'Neill*, 2022 WL 2916816, at *3 n.7 (explaining formulas).

### 2.    Reasonable Hours

Mr. Wynn is entitled to compensation for all hours reasonably spent by his attorneys. *Hensley v. Eckhart*, 461 U.S. 424, 429 (1983). Reasonable hours are those not "excessive, redundant, or otherwise unnecessary." *Id.* at 434. Mr. Wynn's PLF attorneys devoted these hours to substantive tasks for which it would be proper to bill a client.[12] *See In re Home Depot Inc.*, 931 F.3d 1065, 1087 (11th Cir. 2019). Fees are available for time spent on tasks not "clerical, secretarial, or excludable as unnecessary"; qualifying tasks include, among other activities, preparing legal writings, reviewing transcripts, reviewing the court's orders, and communicating with clients. *See O'Neill*, 2022 WL 2916816, at *3. Additionally, under the EAJA, fees are available for time reasonably expended for litigating the fee motion. *See Comm'r, INS v. Jean*, 496 U.S. at 163–65; *see also Jean v. Nelson*, 863 F.2d at 779–80.

"Objections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably precise." *ACLU of Ga. v. Barnes*, 168 F.3d

---

[11] The 2021 calculation was performed by taking an average of the CPI from January 2021 to December 2021; for 2022, January 2022 to August 2022, the last month available, were used. *See* U.S. DEP'T OF LABOR, BUREAU OF LABOR STATISTICS, https://data.bls.gov/cgi-bin/surveymost?cu (last visited Oct. 7, 2022).
[12] These hours are itemized and attached as Exhibit D.

423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301). Thus, "'a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal.'" *Mraz*, 2021 WL 4086147, at *12 (quoting *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313, 1320 (M.D. Fla. 2001). "'[A]ll hours to which the [fee opponents] have not made an objection will be accepted.'" *Id.*

Also noteworthy is that the relevant work to be considered is for the entire case. *See, e.g.*, *Hensley v. Eckhart*, 461 U.S. at 435, n.11 ("The result is what matters" and "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."). Even where a plaintiff "fail[s] to prevail on every contention raised in the lawsuit, . . . [w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435.

Mr. Wynn was successful on his claim prior to Congress's voluntarily repealing Section 1005. Mr. Wynn had essentially one claim with multiple counts: Section 1005 violated the Constitution, and its implementation violated the APA. Compl., ECF No. 1 at ¶¶ 50–67. All of the time Mr. Wynn's attorneys spent on this case was in service of that claim. Most importantly, by obtaining a preliminary injunction, Mr. Wynn obtained the relief available to him on the core of his claim at that stage in the litigation. *Hensley*, 461 U.S. at 436 ("the most critical factor is the degree of success obtained."). The hours contributed to the case after that point were reasonably necessary to a case that was still being litigated and foreseeably, without the benefit of hindsight, would continue to be litigated. It cannot be argued the work Mr. Wynn's

attorneys contributed to the case was not necessary solely because another party ultimately changed the nature of the case. Thus, all hours Mr. Wynn's attorneys reasonably spent on this case are compensable. Additionally, since the hours for which fees are requested here are accurately based on time devoted to substantive tasks for which it would be appropriate to bill a client, any objections that the hours are unreasonable would be unavailing.

Accordingly, Mr. Wynn should be granted attorney fees for 474.11 total hours. *See* Ex. D, Itemized Statement of Attorney Hours.

### 3.   Lodestar Calculation

What follows is an outline of the hours and rates for the lodestar amount of the reasonable fees incurred on the merits in this matter. The rates applied are for $212.61 (2021) and $228.91 (2022), resulting in $100,805.42 total in fees for 474.11 hours. The individual fee amounts are as follows: Wencong Fa (admitted 2013), 286.95 (2021) and 0.30 (2022) hours for $61,077.11 total; Glenn Roper (admitted 2007), 154.72 hours (2021) for $32,895.02 total; and Daniel Ortner (admitted 2020), 32.14 hours (2021) for $6,833.29 total.

### 4.   Reasonable Expenses

The EAJA authorizes the recovery of litigation expenditures of the type included in 28 U.S.C. § 2412(d)(1)(A) and, through 28 U.S.C. § 2412(a), those delineated in 28 U.S.C. § 1920. *Jean*, 863 F.2d at 776–77; *see, e.g.*, *Harris v. Comm'r of Soc. Sec.*, No. 6:21-cv-2107-NPM, 2022 WL 2757485 at *2 (M.D. Fla. July 14, 2022) (awarding filing fee

expenses pursuant to 28 U.S.C. § 2412 and 28 U.S.C. § 1920 when the plaintiff's motion under 28 U.S.C. § 2412(d) was granted). As to the second type, though certain expenses, such as expert witness expenses, are explicitly identified in the statute, other expense types are also recoverable. *Id.* § 2412(d)(1)(A), (d)(2)(A); *see Jean*, 863 F.2d at 777. Expenses can be awarded if they are reasonable and necessary to the preparation of the prevailing party's case. *Jean*, 863 F.2d at 777–78.

Accordingly, Mr. Wynn seeks reasonable costs of $26,903.63. *See* Ex. E, F, I, J. The costs include $25,000 (reasonable expert witness fees)[13] and $1,903.63 for other allowable costs (travel, postage, and service). *See Jean*, 863 F.2d at 778 (compensable expenses under the EAJA include "telephone, reasonable travel, postage, and computerized research expenses," as well as facsimile costs, UPS delivery and Federal Express charges.) Mr. Wynn also retained an expert witness whose report was "reasonably necessary to the pursuit" of his claim. *See Baldi Bros. Constructors v. United*

---

[13] This amount is reduced from the amount of expert witness costs incurred, $30,000. Mr. Wynn is requesting fees at a reasonable rate of $350/hour for the lead expert, Stephen G. Bronars, PhD, and $150/hour for the supporting researchers, Claire Li and Noah Goldstein. *See* Ex. G, Pl. Expert Report; Ex. F, Edgeworth Economics Invoices. This is below the rate PLF paid for the services of each of these individuals and meets or is below "the highest rate of compensation for expert witnesses paid by the United States." *See* 28 U.S.C. 2412(d)(2)(A); Ex. F, Edgeworth Economics Invoices; *see also* Ex. H, Def. Expert Report at 8. Though Defendants' lead expert, Alicia M. Robb, PhD, was paid at $300/hour, Professor Robert Fairlie, who contributed to Dr. Robb's analysis, was paid at $350/hour, and the researcher for the report, Jonathan Zandberg, was paid at $150. Ex. H, Def. Expert Report at 8. Mr. Wynn may, therefore, receive an expert witness fee award of $350/hour for Dr. Bronars's work, which is still below the amount PLF paid for Dr. Bronars's services. *See Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 709 (2010) (awarding the plaintiff expert fees above what the government paid for similar services because the highest rate that the government paid for a different expert service was higher). There also can be no suggestion that this amount is outside the reasonable range as Dr. Bronars and Dr. Robb have similar qualifications, and Dr. Robb has stated that her normal pay rate ranges from $300 to $400 per hour. Ex. H, Def. Expert Report at 7, 8; Ex. G, Pl. Expert Report at 3, App. A.

*States*, 52 Fed. Cl. 78, 86 (2002) (internal quotation marks omitted) (awarding expert fees even though the aspect of the claim for which the expert provided services was ultimately unsuccessful). Defendants employed an expert to defend the race-based provisions of Section 1005. It was therefore fully appropriate for Mr. Wynn to employ a rebuttal expert.

## CONCLUSION

By taking an active role in enforcing his rights, Mr. Wynn has fulfilled the purpose of the EAJA. *See Martin*, 773 F.2d at 1150. The requested fees and costs— $100,805.42 for fees and $26,903.63 in total costs—should be granted in full in the amount of $127,709.05.

DATED:  October 12, 2022.

Respectfully submitted,

PACIFIC LEGAL FOUNDATION

 s/ Wencong Fa

Christina M. Martin                          Wencong Fa*
Fla. Bar No. 100760                          Lead Counsel
4440 PGA Blvd., Suite 307                    Cal. Bar No. 301679
Palm Beach Gardens, FL 33410                 555 Capitol Mall, Suite 1290
Telephone:  (561) 619-5000                   Sacramento CA 95814
Facsimile:  (561) 619-5006                   Telephone:  (916) 419-7111
Email:  CMartin@pacificlegal.org             Facsimile:  (916) 419-7747
                                             Email:  WFa@pacificlegal.org

                                             Glenn E. Roper*
                                             Colo. Bar No. 38723
                                             1745 Shea Center Dr., Suite 400
                                             Highlands Ranch CO 80129
                                             Telephone:  (916) 419-7111
                                             Facsimile:  (916) 419-7747
                                             Email:  GERoper@pacificlegal.org

*Attorneys for Plaintiff*
\* Special admission

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certifies that counsel for Plaintiff

conferred by phone and by email with counsel for the defendants on October 7, 2022.

The parties were unable to come to a resolution. The relief requested in this motion is

opposed.

s/ Wencong Fa
Wencong Fa\*
Cal. Bar No. 301679
Lead Counsel
\* Special Admission

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2022, I submitted the foregoing to the Clerk of the Court via the District Court's CM/ECF system, which will provide notice of the submission of this document to all counsel of record.

 s/ Wencong Fa<br>
Wencong Fa*<br>
Cal. Bar No. 301679<br>
Lead Counsel<br>
* Special Admission