United States District Court
Middle District of Florida
Jacksonville Division

SCOTT WYNN, AN INDIVIDUAL,

      **Plaintiff,**

**v.**                                   **NO. 3:21-CV-514-MMH-LLL**

THOMAS J. VILSACK, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF
AGRICULTURE, AND ZACH
DUCHENEAUX, IN HIS OFFICIAL
CAPACITY AS ADMINISTRATOR, FARM
SERVICE AGENCY,

      **Defendants.**

---

### Report & Recommendation

Before the Court is Plaintiff Scott Wynn's Motion for Attorneys' Fees under 28 U.S.C. § 2412, the Equal Access to Justice Act (EAJA), doc. 100, and Defendants Thomas J. Vilsack and Zach Ducheneaux's (the Government) Opposition to the Motion for Attorney's Fees, doc. 106.[1] This matter has been referred to me for a report and recommendation regarding the appropriate resolution, doc. 100. For the reasons that follow, I respectfully recommend plaintiff's motion be **denied**.

---

[1] The parties also filed various declarations, attachments, and supplemental authority in support of their positions which have also been considered by the Court. Docs. 101, 102, 103, 107.

## Background

Plaintiff is a white farmer living and working in Jennings, Florida. Doc. 1 ¶ 4. On May 18, 2021, he brought the above-captioned suit, challenging Section 1005 of the America Rescue Plan Act of 2021, which provided debt relief to socially disadvantaged farmers and ranchers (SDFRs). Doc. 1. Plaintiff alleged that Section 1005 violated equal protection under the Fifth Amendment (count 1) and, relatedly, its implementation should have been barred under the Administrative Procedure Act (count 2). Doc. 41 at 3, 6 (citing doc. 1). Plaintiff sued Thomas J. Vilsack, the Secretary of Agriculture, and Zach Ducheneaux, the administrator of the United States Department of Agriculture (USDA) and head of the Farm Services Agency (FSA), in their official capacities. Doc. 1 ¶¶ 10, 11.

Relevant here, Section 1005(a)(2) enabled Vilsack to pay "[SDFRs] . . . up to 120% of the indebtedness . . . of [a] SDFR's direct . . . [FSA] loans and any farm loans guaranteed by the Secretary." Doc. 41 at 2. As used in Section 1005, a SDFR means a farmer or rancher "who is a member of a socially disadvantaged group," that is "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." *Id.* (citing 7 U.S.C. §§ 2279(a)(5) and 2279(a)(6)). As the Honorable Marcia Morales Howard, presiding District Judge, explained, "[r]acial or ethnic groups that categorically qualify as socially disadvantaged are 'Black, American Indian/Alaskan Native, Hispanic, Asian,  and Pacific Islander.'" *Id.* (additional citations omitted). White or Caucasian farmers, like plaintiff, did not qualify for debt relief. *Id.* Thus,

plaintiff alleged the law treated him unfairly because his USDA farm loans were not eligible for debt relief solely because of his race. Doc. 1 ¶ 4. Eleven similar equal protection challenges were brought by farmers across the United States.[2] *See* doc. 106 at n.1 (citing cases).

On June 23, 2023, the Court issued a preliminary injunction immediately enjoining the Government, their agents, and employees "from issuing any payments, loan assistance, or debt relief under Section 1005(a)(2) . . . until further order from the Court." Doc. 41 at 48-49. Although two other courts also granted preliminary injunctions regarding the operation of Section 1005, Judge Howard was the first to do so. Docs. 100 at 2-3, 106 at 4; 84 at 2.[3] *See Miller v. Vilsack*, No. 4:21-cv-595, 2021 WL 11115194 (N.D. Tex. July 1, 2021); *Holman v. Vilsack*, No. 21-cv-1085, 2021 WL 2877915 (W.D. Tenn. July 8, 2021).

Sometime after the nationwide, temporary injunction here issued, a court in the Northern District of Texas—also reviewing a constitutional challenge to Section 1005—issued an injunction and certified a nationwide class action. Doc. 84 at 2; *see Miller v. Vilsack*, 2021 WL 11115194, at *12. Plaintiff was a member of the certified

---

[2] *See Miller v. Vilsack*, No. 4:21-cv-595 (N.D. Tex.); *Holman v. Vilsack*, No. 21-cv-1085 (W.D. Tenn.); *Kent v. Vilsack*, No. 21-cv-540 (S.D. Ill.); *Faust v. Vilsack*, No. 1:21-cv-548 (E.D. Wis.); *Carpenter v. Vilsack*, No. 2:21-cv-103 (D. Wyo.); *McKinney v. Vilsack*, No. 2:21-cv-212 (E.D. Tex.); *Joyner v. Vilsack*, No. 1:21-cv-1089 (W.D. Tenn.); *Dunlap v. Vilsack*, No. 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, No. 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, No. 3:21-cv-147 (D.N.D.); *Nuest v. Vilsack*, No. 21-cv-1572 (D. Minn.).

[3] A Court in the Eastern District of Wisconsin granted a temporary restraining order against the enforcement of Section 1005 approximately two weeks before the preliminary injunction was issued here. *See Faust v. Vilsack*, 519 F. Supp. 3d 470 (E.D. Wis. 2021).

class in *Miller. Id.* at n.3 (citations omitted); doc. 84 at 3. On December 7, 2021, the above-captioned case was "stayed pending resolution of the class action claims of which [plaintiff] [was] a member in *Miller v. Vilsack . . . .* " Doc. 84 at 11.[4]

On August 16, 2022, the President signed the Inflation Reduction Act of 2022 which repealed Section 1005, mooting the constitutional challenge. Doc. 89 ¶ 2. The parties in *Miller* stipulated to the dismissal of the case. *Id.* ¶ 3. The parties here then stipulated to the dismissal of this action without prejudice, doc. 90, and on September 13, 2022, the case was dismissed; the Court, however, reserved jurisdiction to consider any motions for attorneys' fees and/or costs, doc. 91.

This fees motion timely followed. Doc. 100. Plaintiff argues he qualifies as a "prevailing party" under the EAJA because "he obtained the first preliminary injunction that enjoined the race-based debt relief program nationwide." Doc. 100 at 1. He asks the Court to award him expenses and fees under the EAJA in the amount of $127,709.05. *Id.* The Government argues plaintiff cannot recover here for two reasons. First, plaintiff is not a prevailing party because the preliminary injunction issued by the District Judge did not "award lasting, enduring, or irreversible relief," rather it maintained the status quo. Doc. 106 (citing doc. 41 at 45). Second, the Government argues it was substantially justified in its position opposing a preliminary injunction. *Id.* at 10.

---

[4] The Court indicated that plaintiff could move to lift the stay upon entry of final judgment in the *Miller* class action, or if Wynn was removed from the class. Doc. 84 at 11.

## Analysis

Under the EAJA, a court shall "award to a prevailing party . . . fees and other expenses . . . incurred by the party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).[5]

The purpose of the EAJA is to abolish the financial hardship for the average person challenging unreasonable government actions. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163-64 (1990) (citation omitted). Still, "the EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States." *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991) (citations omitted).

The applicant in an EAJA proceeding has the burden of establishing eligibility for attorneys' fees. *Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 168 (4th Cir. 2004). *See also Sosebee v. Astrue,* 494 F.3d 583, 589 (7th Cir. 2007) ("[The applicant] had the burden of showing [his eligibility for EAJA fees] by the normal civil standard of proof, which is to say by a preponderance of the evidence.") (citation omitted). And the "government bears the burden of showing that its position was substantially

---

[5] Under the EAJA, an individual moving party must not have a net worth that exceeds $2,000,000 at the time the action was filed. 28 U.S.C. § 2412(d)(1)(D)(2)(B). The Government does not dispute that plaintiff's net worth was less than $2,000,000 at the time the action was filed.

justified." *United States v. Jones*, 125 F.3d 1418, 1425 (11th Cir. 1997) (citation omitted). Any fees awarded must be "reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983); 28 U.S.C. § 2412(d)(2)(A). There are three requirements that must be satisfied for a fee award under the EAJA: 1) plaintiff was a prevailing party; 2) the Government's position was not "substantially justified;" and 3) special circumstances do not render the award unjust. 28 U.S.C. § 2412(d)(1)(A). I address the relevant requirements in turn.

### A. Plaintiff is not a prevailing party for purposes of the EAJA and is not entitled to attorneys' fees.

Plaintiff argues he qualifies as a "prevailing party" under the EAJA because his preliminary injunction motion was successful. Doc. 100 at 6-8. The Government disagrees, arguing the relief plaintiff obtained in the form of a preliminary injunction maintained the status quo, was not enduring, and merely preserved plaintiff's ability to obtain relief. Doc. 106 at 6 (citing doc. 47).

Courts typically follow what has been termed "the American Rule;" that is, the parties typically bear their own attorneys' fees. *Key Tronic Corp. v. United States*, 511 U.S. 809, 815-16 (1994) (citation omitted). "Under this American Rule, we follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Hum. Res.*, 532 U.S. 598, 602-03 (2001) (citation omitted). The EAJA is one such statute, explicitly carving out the award of attorneys' fees to a prevailing party. 28 U.S.C. § 2412.

The Supreme Court has instructed that "'[t]he touchstone of the prevailing party inquiry' . . . is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)).[6] Courts look to whether a plaintiff gained an "enduring 'change in the legal relationship'" between himself and the state officials he sued. *Id.* at 86 (quoting *Garland,* 489 U.S. at 792).

The Eleventh Circuit has interpreted the phrase "prevailing party" in this context "to require either '(1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties.'" *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009) (quoting *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003)). The temporary nature of injunctive relief, however, does not foreclose prevailing party status. *Common Cause Georgia v. Georgia*, 17 F.4th 102, 107 (11th Cir. 2021). "The Supreme Court teaches [that] 'prevailing party' status may be based on 'success on any significant claim affording

---

[6] In *Garland*, the Supreme Court analyzed who constitutes a prevailing party under 42 U.S.C. § 1988, not the EAJA. Section 1988 authorizes federal district courts to award attorneys' fees in proceedings in vindication of civil rights. 42 U.S.C. § 1988. Cases interpreting section 1988 are nevertheless instructive here because the standards "applicable to § 1988 fee awards 'are generally applicable in all cases which Congress has authorized an award of fees to a prevailing party[,]'" including the EAJA. *Hensley v. Eckhart*, 461 U.S. 424, 433 n.7 (1983). *Reeves v. Astrue*, 526 F.3d 732, 735-36 (11th Cir. 2008).

the litigant some of the relief sought, either *pendente lite* or at the conclusion of the litigation.'" *Id.* (quoting *Garland*, 389 U.S. at 791) (alterations omitted).

Upon review, I find there is no per se rule in the Eleventh Circuit that equates obtaining a preliminary injunction with prevailing party status.[7] Instead, the Eleventh Circuit takes a holistic approach and analyzes the nature of the specific relief granted in the context of deciding whether a fee award is appropriate. Thus, any analysis must consider whether the relief altered the legal relationship between the parties to a degree significant enough to entitle plaintiff to fees.

For instance, in *Markham v. International Association of Bridge, Structural & Ornamental Iron Workers*, 901 F.2d 1022, 1027 (11th Cir. 1990), the district court awarded a preliminary injunction temporarily dissolving a trusteeship and subsequently awarded the movant attorneys' fees as the prevailing party. *Id.* The Circuit, however, reversed on the attorneys' fees award, explaining that on the facts before it, obtaining a preliminary injunction was not "a critical step [that] essentially procured all the relief required[,]" rather, "the only purpose served by the injunction was to prevent any harm . . . until the internal hearing could be held and the merits . . . could be evaluated." *Id.* (citation and quotations omitted).

---

[7] Stated otherwise, I do not find, as plaintiff urges, that obtaining a preliminary injunction on the merits entitles one to prevailing party status as a matter of law. Doc. 100 at 6 (citing *Common Cause Georgia*, 17 F.4th at 107).

I do not highlight *Markham* for the proposition that its facts are analogous to that which is before the Court. Instead, I cite it in support of my reading of Eleventh Circuit law, which is fact and context specific:

> Success at the preliminary injunction stage *in this case* does not support a fee award because it did not alter the legal relationship between the parties. In so holding, we do not preclude the possibility that a plaintiff who is ultimately successful on the merits may be reimbursed for fees incurred at the preliminary injunction stage, or that a plaintiff obtaining a hearing where none was planned may make a meritorious claim for attorney's fees. In both such scenarios, the injunction *could* form a vital function in changing the legal relationship between the parties, in a way it did not in this case.

*Id.* at 1027-28 (emphasis added).

Although the Eleventh Circuit has concluded a preliminary injunction on the merits may provide prevailing party status, *Billups*, 554 F.3d at 1356; *Common Cause Georgia*, 17 F.4th at 107 (citing *Billups*, 554, F.3d at 1356),[8] this must also be considered in conjunction with *Markham*, which is still good law. 901 F.2d at 1027-28. Thus, the Court must analyze the specific circumstances of the preliminary injunction when making a fees determination under the EAJA.

For example, in *Common Cause Georgia*, the plaintiff, a not-for-profit organization, sued the Georgia Secretary of State on the eve of the Georgia general election alleging that the state election system was vulnerable to security breaches, potentially preventing eligible voters from casting their votes. *Id.* at 105. One day after

---

[8] Nor does the repeal of an enjoined statute preclude a plaintiff from obtaining prevailing party status. *Id.*

the election, the nonprofit moved for a temporary restraining order to stop the state from rejecting certain provisional ballots. *Id.* at 105-06. The district court granted the motion, although the lawsuit was later mooted due to the passage of new laws affecting the handling of provisional ballots. *Id.* at 106.

The Eleventh Circuit found that issuing the temporary restraining order was relief on the merits and that the nonprofit was entitled to prevailing party status. *Id.* 107-08. The Circuit explained that the nonprofit had shown a substantial likelihood of success and that the temporary restraining order "materially altered the parties' legal relationship" in significant ways.[9] *Id.* at 108. In support, the Circuit explained that the district court ordered: 1) the Secretary to comply with federal and state law by establishing and publicizing a hotline or website for provisional ballot voters; 2) state officials to give voters more information about provisional ballots and registration status; and 3) the Secretary to independently review provisional voter eligibility, clarifying what resources the state could review in determining voter eligibility. *Id.* at 108. Additionally, the district court enjoined the Secretary from certifying the election before a date certain. *Id.*[10] Thus, the Circuit summarized, "[t]he temporary restraining order marked a change in the legal relationship between the parties—it altered the Secretary's conduct and benefited [the nonprofit] and its members." *Id.* at 108.

---

[9] This step would have been unnecessary if, as plaintiff urges, there was a per se rule entitling a party who was granted a preliminary injunction or a temporary restraining order to prevailing party status.

[10] The district court further noted that there was a risk of irreparable injury (i.e., some votes not being counted) in the event the temporary restraining order did not issue. *Id.* at 106.

Similarly, in *Billups*, the district court preliminarily enjoined Georgia from enforcing a law requiring photo identification for in-person voting. *Billups*, 554 F.3d at 1347. Thus, the relationship between the individual voters and election officials was "materially altered" because "the injunction prevented Georgia from enforcing the requirement of photo identification for in-person voting." *Id.* Stated otherwise, plaintiffs could vote, in person, without showing photo identification in the 2006 election. *Id.* ("The injunction prevented Georgia from enforcing the requirement of photo identification for in-person voting."). Plaintiffs in *Billups*, therefore, had an "enduring opportunity to profit from the Court order," unlike plaintiff here, who did not receive a material benefit from the injunction or alter the relationship between the parties. *See Holman v. Vilsack*, No. 21-cv-1085, 2023 WL 2776733, at *4 (W.D. Tenn. Apr. 4, 2023) (discussed further below).

Considering the above, I am not persuaded that plaintiff has met his burden to show a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole*, 551 U.S. at 77 (citation and quotation omitted). The preliminary injunction here did not require the Government to do anything; instead, it cemented the status quo, unlike the preliminary relief ordered in *Common Cause Georgia* and *Billups* outlined above. By issuing the injunction, the Court temporarily prevented the Government from providing debt relief to SDFRs, as contemplated by Section 1005. Doc. 41. The injunction was a legally significant decision, but not one that materially altered plaintiff's relationship with the

11

Government. Plaintiff did not receive debt relief or other expanded rights or opportunities; rather, his constitutional rights were preserved.[11]

Indeed, the plain language of the Order granting the request for the preliminary injunction highlights that its issuance was the only way to maintain the status quo for plaintiff:

> [Plaintiff] also has shown that absent an injunction, all SDFRs with qualifying farm loans will receive up to 120% debt relief and he will suffer the harm of being excluded from eligibility for that debt relief program solely on the basis of his race. That harm, he has shown, is irreparable. The debt relief given to the SDFRs cannot be undone, the Court cannot order that Plaintiff receive equivalent relief, and money damages are precluded . . . Only a preliminary injunction halting the distribution of payments and debt relief under Section 1005 can give Plaintiff an opportunity to obtain any redress . . . This Court has never gone so far as to issue a[] [nationwide] injunction and is firmly of the view that a narrow injunction that maintains the status quo in the specific circumstances of the plaintiff before the Court[,] and nothing more[,] is the appropriate remedy.

*Id.* at 47.

This finding is in accord with *Holman*, where the plaintiff farmer also obtained a preliminary injunction preventing the enactment of Section 1005 in the Western District of Tennessee. *Holman v. Vilsack*, 2021 WL 2877915.[12] *Holman* later denied plaintiff's motion for attorneys' fees under the EAJA because it concluded he was not

---

[11] See doc. 41 at 40 (explaining the Court could not order plaintiff to receive the same debt relief as the SDFRs because decisions about who to include the in the statute are left to Congress).

[12] *Holman* and *Wynn* are the only cases in which a fees motion was filed under the EAJA.

the prevailing party within the meaning of the statute. 2023 WL 2776733, at *4.

*Holman* ultimately concluded that the plaintiff:

> received preliminary relief that was by nature 'temporary and revocable,' i.e., an injunction precluding the Government from implementing § 1005 until a decision on the merits if the case could be rendered . . . [t]he injunction in this case provided Plaintiff with nothing lasting—no permanent change of status, no irrevocable benefit, and no enduring opportunity to profit from the Court's order.

*Id.*[13] Thus, I find here that plaintiff does not qualify as a prevailing party under the EAJA and is not entitled to an award of attorneys' fees.

### B. The Government's position was substantially justified.

Even, assuming arguendo, plaintiff met his burden to show he is a prevailing party, he cannot recover fees because the Government's position was substantially justified.[14] 28 U.S.C. § 2412(d)(1)(A). The Government bears the burden of proving its position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S 552, 565 (1988).

Congressional enactments, such as Section 1005, enjoy a presumption of constitutionality; thus, "situations in which the government's defense of the constitutionality of a federal statute fails the substantially justified test should be

---

[13] Although *Holman* analyzed the issue under the law of the Sixth Circuit, the reasoning and characterization of the relief obtained through the preliminary injunction is sound; I do not find that the law of the Eleventh Circuit compels a different result.

[14] The EAJA contains a substantial justification requirement, not found in 42 U.S.C. § 1988 (the fee-shifting statute at issue in *Billups* and *Common Cause Georgia*). 28 U.S.C. § 2412(d)(1)(A).

13

exceptional." *Nat'l Fed'n of Republican Assemblies v. United States*, 263 F. Supp. 2d 1372, 1377 (S.D. Ala. 2003) (quoting *Grace v. Burger*, 763 F.2d 457, 458 n.1 (D.C. Cir. 1985) (additional citations omitted)). *See also Vacchio v. Ashcroft*, 404 F.3d 663, 675 (2d Cir. 2005) ("[T] here is no doubt the Government is entitled—if not obligated—to put forth a good faith effort to defend the constitutionality of federal laws, especially those that have never been found unconstitutional."); *Kiareldeen v. Ashcroft*, 273 F.3d 542, 549 (3d Cir. 2001) (concluding the Department of Justice was duty-bound to defend what Congress had enacted, and was therefore substantially justified in defending the constitutionality of the statute). This does not mean, however, that a plaintiff may never make such a showing. "[A]lthough the defense of a congressional statute from constitutional challenge will usually be substantially justified, . . . neither the language of the EAJA nor its legislative history support the argument that is true as a matter of law." *League of Women Voters of Ca. v. F.C.C.*, 798 F.2d 1255, 1259 (9th Cir. 1986) (additional citations omitted).

The Eleventh Circuit outlines in *Jean v. Nelson* six non-exhaustive factors a court may consider in determining whether the Government's position was substantially justified, or reasonable, under the EAJA: 1) the state at which the litigation was resolved,[15] 2) views on the merits expressed by other courts, 3) the legal merits of the position, 4) "the clarity of the governing law," 5) "the foreseeable length and

---

[15] Some courts refer to this factor as "the *stage* at which the litigation was resolved." *Nat'l Fed'n of Republican Assemblies*, 263 F. Supp. 2d at 1378 (citing *Jean v. Nelson*, 863 F.2d at 767) (emphasis added).

complexity of the litigation," and 6) "the consistency of the government's position." 863 F.2d 759, 767-68 (11th Cir. 1988) (additional citations omitted). "Of course, these guideposts are not intended to be an exhaustive list of all the factors a district court, acting in its discretion, may undertake to review." *Id.*

First, "[a]n early, summary disposition of a fact-intensive case suggests that the Government's position was not substantially justified." *Nat'l Fed'n of Republican Assemblies*, 263 F. Supp. 2d at 1378 (citing *Pierce*, 487 U.S. at 568-69). Here, the case was not summarily disposed of through summary judgment or trial; there was no judgment. Rather, the Court preserved the status quo through its issuance of a preliminary injunction before the case was stayed, and the law was eventually repealed, mooting the issue. Doc. 84. Because the case was mooted before the Court decided, on a full record, whether Section 1005 violated equal protection, I find the first factor favors the Government. *See id.* (finding this first factor did not support the awarding of fees where the "case centered on a multitude of legal questions and was not decided early in the litigation.").

Turning to the second *Jean*[16] factor—views on the merits expressed by other courts—Judge Howard was the first to enter a preliminary injunction enjoining the debt-relief program for SDFRs nationwide and was the first to analyze the constitutionality of the law in depth, including historical evidence of discrimination, the alleged inadequacy of past remedial measures, Government reports, statistical

---

[16] 863 F.2d at 767.

evidence, and case law instructive on narrow tailoring. Doc. 41. Indeed, the preliminary injunctions issued in *Miller* and *Holman* cited Judge Howard's Order, doc. 41, extensively. *See Miller*, 2021 WL 11115194, at *9; *Holman*, 2021 WL 2877915, at *7.[17] Thus, the constitutional viability of Section 1005 had not yet been meaningfully tested by the Courts before the Government defended it here. The second factor also favors the Government.

Third, I examine the legal merits of the Government's position.[18] In response to plaintiff's request for a preliminary injunction, the Government argued that Section 1005 was constitutional and urged the Court to find that it passed strict scrutiny. *See* doc. 41 at 6 (citing *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003) (explaining that as a race-based governmental action, Section 1005 is subject to strict scrutiny)). This is the most stringent level of statutory review; to pass strict scrutiny, "a law must serve a compelling governmental interest and be narrowly tailored to further that interest." *Id.* (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224 (1995)). But this level of review does not mean that the Government's defense of statutory construction is unjustified. *See Grutter*, 539 U.S. at 326-27 ("Although all government uses of race are subject to strict scrutiny, not all are invalidated by it."). Indeed, the Government argued it had a compelling interest in relieving the debts of SDFRs and that the

---

[17] As noted above, the preliminary injunction, doc. 41, did not finally reach the merits of the constitutional challenge; rather it preserved the status quo while giving the Government, and plaintiff, time to litigate the issue to finality on the merits.

[18] *See Jean*, 863 F.2d at 767.

operation of the statute: 1) "remed[ied] the well-documented history of discrimination against minority farmers in the USDA loan (and other) programs" and 2) "prevent[ed] public funds from being allocated in a way that perpetuates the effects of discrimination." Doc. 41 at 7-8 (internal citations omitted).

The Government also provided evidence of alleged discrimination, including: "substantial legislative history," expert testimony at congressional committee meetings, congressional reports, and the floor statements of legislators supporting the passage of Section 1005. *Id.* at 9. The evidence included a "dramatic decrease in minority owned farms from 1920 to 1992," lower approval rates among minority farmers, and "concerted efforts by USDA to ignore the complaints of discrimination made by minority farmers." Doc. 41 at 10. The Court concluded: "It is undeniable— and notably uncontested by the parties—that USDA had a dark history of past discrimination against minority farmers," *id.*, but that, at the preliminary injunction stage, "the actual evidentiary support for the inadequacy of past remedial measures is limited and largely conclusory." *Id.* at 12; *see also* doc. 41 at 11-12 (finding evidence of continued discrimination *may* be inadequate) (emphasis added); *id.* at 15-16 (expressing doubt that, on the record before the Court, the Government would prevail; but stopping short of determining whether the Government will ultimately provide a compelling need for the broad relief granted in Section 1005); *id.* at n.9 (noting the limited nature of the record). And although the Government argued that Section 1005 was narrowly tailored to achieve its purported interest, the Court disagreed. *See, e.g.,*

doc. 41 at 22 (finding the debt relief program "untethered to an attempt to remedy any specific instance of past discrimination.").

Even though the Court found in favor of plaintiff at the preliminary injunction stage, the Government's position was not unreasonable. Instead, the Court emphasized that "at this stage" and on the record before it, it was granting the requested relief preliminarily because the Government failed to show that the statute was narrowly tailored to further its interest. *Id.* at n.9 ("On a more fully developed record, the Government may be able to establish that despite past remedial efforts the harm caused by the disgraceful history of discrimination by the USDA in farm loans and programs is ongoing . . . . "). "[A] position can be justified even though it is not correct, and we believe it can be substantially (i.e. for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2. The Third Circuit has explained:

> A court must not "assume that the government's position was not substantially justified simply because the government lost on the merits." *Morgan v. Perry*, 142 F.3d 670, 685 (3d Cir. 1998) (citation omitted); *accord Pierce*, 487 U.S. at 569, 108 S.Ct. 2541 (reminding that the government "could take a position that is substantially justified, yet lose"); see also S. Rep. No. 96–253, at 7 (1979); H.R. Rep. No. 96–1418, at 11 (1979), *reprinted in* 1980 U.S.C.C.A.N. 4953, 4984, 4990 (stating that the EAJA "should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing"); *Clarke v. INS*, 904 F.2d 172, 175 (3d Cir.1990) ("EAJA is a waiver of sovereign

> immunity, however, so it must be construed strictly in favor
> of the United States").

*Kiareldeen*, 273 F.3d at 554. Preliminary relief issued by multiple courts in separate

actions,[19] as is the case here, may suggest the Government faced an uphill battle in

ultimately establishing the law passed constitutional muster at a trial or summary

judgment stage,[20] but that does that not mean the Government cannot defend a

congressionally-enacted law.

The fifth factor is "the foreseeable length and complexity of the litigation." *Jean*,

863 F.2d at 767.

> The longer and more complex the course of litigation
> necessary to vindicate his position, the more hesitant a
> private party will be to defend his interests . . . .
> [Accordingly], in categories of cases in which substantial
> investments of effort and money commonly are required to
> prosecute suits to their ultimate conclusions, the
> government should be obliged to make an especially strong
> showing that its persistence in litigation was justified.

*Nat'l Fed'n of Republican Assemblies*, 263 F. Supp at 1379 (quoting *Spencer v. NLRB*, 712

F.2d 539, 560 (D.C. Cir. 1983)). Here, the parties agreed the case could be resolved

with limited discovery and on summary judgment because the constitutional question

before the Court was largely a legal one.[21] And, in the end, the case was stayed, sparing

---

[19] Doc. 41; *Faust v. Vilsack*, 519 F. Supp. 3d 470 (E.D. Wis. 2021); *Miller v. Vilsack*, 2021 WL 11115194, at *9; *Holman v. Vilsack*, 2021 WL 2877915.

[20] *See* doc. 54 (explaining that a plaintiff seeking a preliminary injunction must establish he is likely to succeed on the merits).

[21] Although a complex legal question.

the parties from complex and expensive discovery disputes, and dispositive motion practice. *See id*. (explaining that while the issues were complex, the litigation was not because the parties put most arguments in brief form in motions for preliminary injunction and motions to dismiss early in the case, discovery was conducted, and the merits determined at the summary judgment stage; and thus, the complexity factor did not support awarding attorneys' fees).

In conclusion, I do not find the Government's position in defending the constitutionality of Section 1005 unreasonable. *Compare Jean* 863 F.2d at 769 (holding the Government's failure to follow the advice of its general counsel unreasonable); *Hudson v. Sec. of Health and Hum. Servs.*, 839 F.2d 1453, 1456-57 (11th Cir. 1998) (finding an agency secretary's failure to follow agency regulation in defense of a lawsuit was not substantially justified). As discussed above, the *Jean* factors, on balance, weigh in the Government's favor. This finding is further buttressed by the presumed constitutionality of congressionally enacted statutes, such as Section 1005, *Nat'l Fed'n of Republican Assemblies*, 263 F. Supp. 2d at 1377, and the narrow waiver of sovereign immunity allowed by the EAJA. *Ardestani*, 502 U.S. at 137 (citations omitted).[22]

---

[22] Because I find plaintiff is not entitled to an award, I do not reach the question of whether a fee award is unjust under the EAJA, 28 U.S.C. § 2412. Additionally, it is also unnecessary for the Court to opine on the reasonableness of the fee request using the lodestar analysis.

**Recommendation**[23]

I respectfully **recommend**:

1. Plaintiff's Motion for Attorneys' Fees, doc. 100, be **denied** and the case remain **closed**.

2. The parties be directed to file a status report regarding plaintiff's request for costs, doc. 96, within 14 days of the issuance of a final fee Order.[24]

   **Entered** in Jacksonville, Florida, on August 1, 2023.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

c.
The Honorable Marcia Morales Howard, United States District Judge
Glenn Evans Roper, Esquire
Christina Marie Martin, Esquire
Kyla Snow, Department of Justice

---

[23] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

[24] I note that although a proposed bill of costs was filed, objections to it were deferred until after the Court ruled on the attorneys' fees motion. Doc. 99. The Government alleges the resolution of the fee petition "may well be" dispositive of plaintiff's entitlement to costs, and that it "is possible the parties could resolve any dispute over the bill of costs without further litigation once the Court has ruled on the fee petition." Doc. 98.

Michael F. Knapp, Department of Justice
Janet R. Varnell, Esquire
Brian W. Warwick, Esquire
David Samuel Muraskin, Esquire
Jessica Leigh Culpepper, Esquire